### THE TREMOLO PATENT.

TREMAINE *v.* HITCHCOCK & Co. HITCHCOCK & Co. *v.* TREMAINE.

1. An amendment which changed the character of a bill, allowed even after final decree, the circumstances being peculiar and the cause having been, in fact, tried exactly as it would have been if the bill had originally been in the amended form.

2. The defendants, venders of organs generally, and selling sometimes organs having a patented invention consisting of a combination of what was called a "tremolo attachment," with the organ; and selling sometimes organs without the attachment, were decreed guilty, in their sales of organs with the attachment, of infringing the complainant's patent. *Held,*

     i. That in the ascertainment of profits made by them from sales of the organs with the tremolo attachment, it was proper to let them prove the general expenses of their business in effecting sales of organs generally, and deduct a ratable proportion from the profits made by the tremolo attachment.

     ii. That the master in the present case, for the particulars of which the reader must see the statement of the case (*infra*, page 520), had ascertained on right principles the general expenses.

ON cross appeals from the Circuit Court for the Southern District of New York.

Hitchcock & Co., owners by assignment of a patent to one Carpenter, which had been twice reissued to themselves, filed a bill in the court below against Tremaine and others, vendors of organs generally and other musical instruments, to enjoin their sale of what was known as a "tremolo attachment," an appendage sometimes made to organs; the purpose of which is to make a tremolo or vibratory note, preserving at the same time, as far as possible, its smoothness, fulness, and power.

This tremolo attachment was no necessary part of an organ; but, as its name declared, an "attachment;" an optional device, used or not used at pleasure.

The defendants, who, as already said, were venders of organs generally, and who bought different sorts of organs from the different makers of them, had and sold organs with the attachment (buying them from persons not licensed), and organs without the attachment. For those containing the attachment they paid an additional price, and they sold them also for more than those which did not have the attachment.

The defendants answered the bill, and the case having been heard, and they decreed guilty of infringement, it was referred to a master to take an account of profits, the order of reference directing—

" That he permit the defendants to prove the general expenses of their business incurred alike to effect the sale of all goods (i. e., not specifically incurred in reference to any particular class or kind), said general expenses to be apportioned by the master, and a part of the same, bearing the same proportion to the whole that the gross sum received from sales of the infringement bears to the gross sum received by the defendants from all sales in their said business, to be added to the expense of the infringing tremolos, and allowed to the defendants."

In taking this account, the master did accordingly allow the defendants to prove the general expenses of their business incurred in effecting the sales of *all* musical instruments, and deduct a ratable proportion from the profits made by the sale of tremolo attachments. To explain, he reported thus:

"1st. That the gross sum received by the defendants from all sales in their said business, during the period specified, was $91,165.32.

"2d. That the gross sum received by the defendants from sales of the infringement was $3913.96.

"3d. That the general expenses of their business incurred alike to effect the sales of all goods was $16,868.93.

"4th. That the proportion of such general expenses applicable to the tremolo, pursuant to said order, is $729.22.

"5th. That if said proportionable part of the expenses be added to the expense of the tremolo, or deducted from the profits previously reported, to wit, $1238.48, the profit derived by the defendants from the infringing tremolo will amount to the sum of $509.26."

No detailed statement of general expenses was offered before the master on the part of the defendants, nor did they prove specific items of general expense, except the items of rent, salaries, freight, and cartage, advertising, insurance, gas, and fuel. They made a general statement, however, and introduced their books in cross-examination. Both parties submitted analyses of these books. The master adopted the figures of the defendants' analysis except, where he considered them at variance with the previous sworn testimony, and he allowed as general expenses certain sums and items, including:

| | |
|---|---:|
| Stationery and printing, | $1405 28 |
| Telegraphing, | 47 78 |
| Office furniture and fixtures, | 239 35 |
| Expressage, | 28 12 |
| Labor, | 79 30 |

And disallowed eight various large items.

The complainants excepted:

1st. To the deduction from the profits made on the sale of the tremolo attachments of a ratable proportion of the general expenses of the defendants' business.

2d. To the way in which the master ascertained the general expenses.

The court, however, confirmed the master's report, and a decree was entered accordingly.

Soon after this was done, it was discovered that the case had been tried on issues not made in the pleadings; that the complainants in taking their proofs had put in evidence a reissue different from and later than the one which they had set out in their bill as the ground for their complaint, and that the bill had never in any way been amended.

As to this new matter now brought up after decree made, the case was thus:

The bill set forth that a patent for the "attachment" had been granted on the 27th day of June, 1865, to one Carpenter; that subsequently he assigned the letters-patent to the complainants; that on the 18th day of May, 1869, they surrendered the patent, and obtained a reissue to themselves (**No. 3444**), and that the defendants had been guilty of infringing their rights under the patent.

To the complaint thus exhibited the defendants answered, admitting the grant of the letters to Carpenter, but denying all knowledge as to the truth of the allegations that Carpenter had at any time assigned his interest to the complainants, or to any one or more of them; and, *therefore*, denying that the complainants had any interest in the said letters-patent or to the "*reissues*" of the same as set forth in the bill of complaint. The answer further averred that Carpenter was not the original inventor of the tremolo attachment, but that it was known and was in use before his alleged invention was made. It denied that the defendants had infringed upon the rights and privileges granted by the patent dated June 27th, 1865, "*or by* ANY *of the reissues of the same.*"

To this answer a general replication was put in and the parties went to trial, when the complainants gave in evidence, without objection, reissued letters-patent **No. 3665**, dated October 5th, 1869, which had been granted on the surrender of the first reissue No. 3444. This second reissue was not set out in the bill, but it was obvious enough that both parties supposed it was, through all the progress of the trial. As already said, the answer denied infringement, not of the single reissue mentioned in the bill, but of any of the reissues. No other reissue than No. 3665 was put in

evidence. The decretal order to account mentioned it in terms. The evidence taken by the master under the order of reference related only to attachments sold by the defendants after the second reissue was granted. In the exceptions taken by them to the master's report no intimation was made that the rights of the complainants under the reissue No. 3665 were not on trial, and not even when the final decree was made was it suggested that the parties had been trying the case on an issue not made by the pleadings.

After the final decree had been made, the complainants applied to have the bill of complaint amended by inserting in it a declaration on the reissued letters-patent which were decreed to be valid, and the court below made an order containing a recitation of alleged facts to authorize the order amending the bill as prayed for.

There was no allegation that the bill of complaint ever contained the allegation as to reissue No. 3665, prior to the judgment. The motion and the order were not made "to *conform* the bill to the proofs."

Both parties appealed; the complainants because of the confirmation of the report in the face of their two exceptions to it; the defendants because of the amendment allowed in the bill after a final decree made.

*Mr. F. H. Betts, for the complainants below:*

1. *No part of the general expenses are justly allowable to the defendants.*

The method of computation of profits was erroneous. It forgot that the patent is not for the tremolo itself, but for the *combination* of the organ and tremolo.

If an extra price is received for the combination, without any additional expense being incurred, the whole of that extra price is obtained by the addition of the combination.

It does not avail the defendants to charge a portion of their general expenses against the tremolo, one member of the combination, for in so doing they take off the exact amount from the other member, the organ. The profit on the whole combination is still equal to the exact amount by

which the extra price received by reason of the making of the addition exceeds the amount received for the organ alone. This, for example, is expressed in figures thus:

Cost of organ, $100; received for organ, $200. Cost of tremolo, $12.50; received for tremolo, $25. Amount of general expenses apportioned to each organ, $50; no additional amount incurred by reason of tremolo.

If all, $50 is charged against organ alone. Profit on tremolo alone is $12.50. If $45 is charged on organ and $5 on tremolo, we still have $12.50 as the profit received *for the combination;* i. e., $7.50 on tremolo itself and $5 on organ, *by reason of adding tremolo.*

The same result follows from any apportionment.

Any other rule than this would enable an infringer to add patented devices to his instrument, charge extra prices for them, and thereby increase his profit on his instruments by the exact amount of the proportion of his general expenses that his sales of the infringing device bear to his general business. In other words, the more he infringes the more of the general expenses he diverts from the main instrument, and thereby the more profits he makes without being accountable for it.

The true rule is, if the infringing devices are an integral part of the whole instrument, without which it is incapable of use, and for which a single charge is made, then in determining profits on a part of the organization general expenses are to be apportioned according to cost, or by some other equitable rule.

But when the infringing device is an *optional* one, used or not, at pleasure, and an extra price is charged and received for it when used, the true profit made is the extra sum received for the *addition,* only such expenses being allowed as are incurred by reason of the addition.

It may be urged that as the tremolos induced the sale of organs, and as the sale of organs involved expense, therefore the tremolo must bear its proportion of such expense. This is a plausible position, but in this case the sales of organs produced a profit beyond the profit of the tremolo.

Every sale of an organ which was induced by the presence of a tremolo, instead of creating an expense which lessened that part of the profit measured by the difference between the cost and sale price of the tremolo, not only wholly paid such expense, but added additional profit for the organ. If it be the fact, as it doubtless was, that the presence of the tremolo combination increased the sales of organs, so far from the tremolo combination being charged with anything on that account, it ought to be credited, not only with the difference between its cost and sale price, but also with the additional net profit on the whole instrument whose sale was thereby effected.*

If it would have been impossible to have sold any organs without the tremolo, the whole net profit would have been properly credited to the tremolo.

If half the sales were due to the tremolo combination, to the tremolo is due the profit caused by its own extra price plus one-half of the balance of net profit on the whole instrument, and if the addition of the combination produced no effects, yet still in fairness it ought to be credited with its own *extra* profit, and not charged with any part of expenses it contributed nothing to incur.

The contingency of the presence of the tremolo having retarded sales is not supposable in this case; but if it were, it should still be credited with its own profit and charged with any loss on sales of the whole instrument.

2. " *The master erred in that he has allowed as part of the expenses of business, to be apportioned as general expenses, and has credited a part thereof to the defendants, against the said infringement, the following items:*

| | | |
|---|---|---:|
| " 1st. | *Stationery and printing,* | $1405 28 |
| 2d. | *Telegraphing,* | 47 28 |
| 3d. | *Office furniture and fixtures,* | 239 35 |
| 4th. | *Expenses,* | 28 12 |
| 5th. | *Labor,* | 79 30 |

" *Whereas he ought not to have credited the defendants, or taken*

---

\* McCormick *v* Seymour, 3 Blatchford, 225 ; Seymour *v.* McCormick, 19 Howard, 96 ; Whitney *v.* Mowry, 4 Fisher, 145 ; Carter *v.* Baker, Ib. 404.

*into the account any portion of said sums, because said defendants did not prove what part, if any, of said expenses were allowable under the order of reference."*

If a proportion of the general expenses are to be deducted, then the defendants must bring themselves within the order, and, in regard to that order, the following things are to be noted:

1. A division of expenses is to be made into "general" and "particular."

The "general" expenses being those incurred for *all* goods alike, such as rent, clerk hire, general advertising, &c., the particular expenses being those caused by certain particular goods, and not by reason of selling all the goods, such as cartage on particular instruments, commission of particular sales, &c.

2. The burden of distinguishing between these two classes is upon the defendants. To them alone were the facts known, and it was just and proper that they, and not the complainants, should be required to prove them.

The defendants, by the order, were to be *"permitted"* to prove their *"general"* expenses, as distinguished from the particular ones. Unless they showed, therefore, what their "general" expenses were as distinguished from "particular" ones, the master had nothing to do but to report as before.

The defendants show generally that they had incurred certain items of expense, *i. e.*, stationery, printing, telegraphing, expressage, labor, &c.

Now, each and all of these items may be items of general expense, or they may be particular expense, or they may be part one and part the other.

The defendants have failed to show what part of these expenses is "general" and what part "particular;" they have failed to do this, and therefore the items should be disallowed.

3. *The amendment even after final decree was properly made.*

It is perfectly plain from the statement of the case that all parties, complainants, defendants, and court proceeded upon an assumption that the bill was founded on the re-

issue No. 3365.   To defeat a suit in such a case would be acting quite too technically.

*Mr. B. E. Valentine, contra:*

If the complainants showed a title to the reissue on which the bill was founded, it would be worth while to consider the two exceptions which they make to the master's report; and to show, as we easily could, that the master's report was made on right principles, and the deductions allowed by him in our favor rightly allowed.   But the complainants show no title at all under the reissue No. 3444, on which they base their bill.   It had been surrendered.   The surrender is a solemn declaration that that reissue was void.   It has not been and could not be put in evidence.   On the other hand, an issue which has been put in evidence is not relied on in the bill, nor indeed so much as referred to in it.   A final decree is made on the unproduced, non-existent, and void reissue set forth in the bill, and after final decree the bill is amended so as to let in the proofs.   *Such* an amendment is in the face of all rules and all practice in equity.

It was not an amendment of mere *form*, but was an amendment of substance, inasmuch as a separate and distinct subject-matter of litigation was introduced.

No matter what the amendment sought, inasmuch as it was sought *after replication*, the complainants were not at liberty to amend except on affidavits reciting, among other things, that "the matter of the proposed amendment could not with reasonable diligence have been introduced sooner into the bill."*

In the absence of special rules, it is well-settled law that a bill in equity cannot be amended after the cause is set down for hearing, in any other respect than by making parties.†

In this cause the amendment was not asked for until *after judgment*, and the defendants were deprived of the absolute right which they had to file an *amended answer* or plea.‡

---

* Equity Rule 29.          † Goodwin *v.* Goodwin, 3 Atkyns, 370.

‡ Equity Rule No. 46; and see Walden *v.* Bodley, 14 Peters, 160; Snead *v.* McCoull, 12 Howard, 422.

Even if it were urged that the defendants did litigate the patent No. 3665 on its merits, and were not prejudiced by the amendment, the answer is that the record shows no such state of facts. All the proofs taken by the defendants applied to the reissue No. 3444.

The defendants were not required to object to the introduction of reissue No. 3665. By their answer they required the plaintiffs to prove their title to reissue No. 3444, and when the plaintiffs put in evidence the reissue No. 3665, it proved the defendants' case for them, because it recited on its face that reissue No. 3444 had been *surrendered.*

Mr. Justice STRONG delivered the opinion of the court.

We think that the order of the court directing that the record be amended by inserting in the bill an averment of the second reissue was properly made, under the circumstances of the case, though made after the final decree. For practically the rights of the complainants under the second reissue, and the defendants' infringement thereof were in issue under the answer and the replication. The amendment deprived the defendants of no rights which they had not enjoyed during all the progress of the trial. It may well be denominated only an amendment of form, because it introduced no other cause of action than that which had been tried. It is true that an amendment which changes the character of the bill ought not generally to be allowed after a case has been set for a hearing, and still less after it has been heard. The reason is that the answer may become inapplicable if such an amendment be permitted. But in this case the defendants were not prejudiced. They had every advantage they could have had, if the bill had originally averred the second reissue. The case is undoubtedly anomalous, but we think justice would not be subserved by denying to the Circuit Court the power to order such an amendment as was made, after the cause was tried precisely as it must have been tried if the bill had originally contained the averment inserted by the amendment.

We come then to the errors assigned by the complainants.

They relate to the estimate of profits reported by the master and confirmed by the court.  The defendants were vendors of musical instruments, including organs and melodeons, which they purchased from the manufacturers.  Some of these instruments contained the tremolo attachment, and others did not.  For those containing such attachments they paid an additional price and they sold them also for an increased price.  In the ascertainment of the profits made by them from the sales, they were allowed to prove the general expenses of their business incurred in effecting the sales of all musical instruments, and deduct a ratable proportion from the profits made by the sale of tremolo attachments. It is of this allowance the complainants now complain.  It is said the patent infringed was not for the tremolo itself, but for the combination of the organ and tremolo, and it is argued that if the defendants obtained an extra price for the organ combined with the tremolo without incurring any additional expense, the whole of that extra price was obtained from the addition of the combination.  And it is further insisted that the true rule in cases like the present is that if the infringing device is an integral part of the whole instrument, without which it is incapable of use, and for which a single charge is made, then in ascertaining profits on a part of the organization general expenses are to be apportioned according to the cost, or by some other equitable rule.  But when the infringing device is an optional one, used or not at pleasure, and an extra price is charged and received for it when used, the true profit made is the extra sum received for the addition, deducting only such expenses as are incurred by reason of the addition.  We think such a rule, even if it may sometimes be just, is inapplicable to the present case.  We cannot see why the general expenses incurred by the defendants in carrying on their business, such expenses as store rent, clerk hire, fuel, gas, porterage, &c., do not concern one part of their business as much as another. It may be said that the selling a tremolo attachment did not add to their expenses, and therefore that no part of those expenses should be deducted from the price obtained for

such an attachment.   This is, however, but a partial view.
The store rent, the clerk hire, &c., may, it is true, have been
the same, if that single attachment had never been bought
or sold.   So it is true that the general expenses of their busi-
ness would have been the same, if instead of buying and
selling one hundred organs, they had bought and sold only
ninety-nine.   But will it be contended that because buying
and selling an additional organ involved no increase of the
general expenses, the price obtained for that organ above
the price paid was all profit?   Can any part of the whole
number sold be singled out as justly chargeable with all the
expenses of the business?   Assuredly no.   The organ with
a tremolo attachment is a single piece of mechanism, though
composed of many parts.   It was bought and sold as a whole
by the defendants.   It may be said the general expenses of
the business would have been the same if any one of these
parts had been absent from the instrument sold.   If, there-
fore, in estimating profits, every part is not chargeable with
a proportionate share of the expenses, no part can be.   But
such a result would be an injustice that no one would defend.
We think it very plain, therefore, that there was no error in
the rule adopted for the ascertainment of the profits made
by the defendants out of their infringement of the complain-
ants' patent.

We think also the master's report, confirmed by the court,
was correct in its ascertainment of the general expenses.
At least there is nothing before us to show that it did not
conform to the second decretal order.   The defendants sub-
mitted analyses of their books, from which it is to be pre-
sumed the master distinguished general from particular ex-
penses.

It follows that neither the appeal of the defendants nor
the cross appeal of the complainants can be sustained.

DECREE AFFIRMED; the costs of each appeal to be paid by
the appellants.