## COLDCLEUGH VS. JOHNSON, Administrator, et al.

1. VENDOR AND VENDEE: *Mutuality of contract; want of, when no defense.*
One who receives property from a married woman, under a contract of purchase, whether valid or invalid, and enters upon it and enjoys it for years, will not be heard in a court of equity to plead that the contract is not binding upon her, or to refuse payment upon tender of a sufficient deed. The defense of want of mutuality has no place, except where the defendant has never received the benefit of the contract on his part, and never had the right to enforce it.

2. SAME: *Enforcing lien of married woman's title bond. Parties. Pleading.*
Where husband and wife have executed bond for title to the purchaser of the wife's land, and transferred the purchase note, the assignee of the note should, in a suit instituted in 1872, to enforce the lien upon the land for the purchase money, have made the husband and wife parties, so that their legal title might be divested, and vested in the purchaser; or should have tendered a sufficient deed, executed by the husband and wife, or by her alone if the husband had died.

3. STATUTE OF LIMITATIONS: *Lien of mortgagee or vendor, when barred.*
The bar of a debt due to a mortgagee, or to a vendor of land by title bond, does not necessarily preclude a proceeding *in rem* in a court of equity, to enforce the specific lien upon the land itself. Only adverse possession for the statutory period necessary to bar ejectment, can bar such a proceeding.

4. ADVERSE POSSESSION: *As against mortgagee, or owner by title bond.*
The possession of a mortgagor, or vendee by title bond, is not adverse, and the statute will not commence running to protect him, until there is an open and notorious denial on his part, of the mortgagee's or vendor's title.

APPEAL from *Arkansas* Circuit Court in Chancery.
Hon. J. A. WILLIAMS, Circuit Judge.
*Bell, McCain, Halliburton,* for appellants.
*Dooly, contra.*

EAKIN, J.   Sarah Willis (now Coldcleugh) filed this bill

in the Arkansas circuit court, on the second day of August, 1872, against the administrator and heirs of Lorenzo D. Hewitt, deceased, setting forth, in substance:

That, on the third day of November, 1859, James L. and Paralee Totten sold to said Hewitt a certain tract of land in said county, of which said Paralee was, at the time, seized in fee, as her sole and separate property, with the right to sell and convey the same. Hewitt was then put in possession, and so remained until his death; and his administrator and heirs have had possession since.

The purchase money was all then, and since, paid, save the balance of a note for $1,000, due January 1, 1860, given by Hewitt to the vendors, upon which $500 was paid on the last day of December, 1859. At the time of the sale, the vendors gave Hewitt a bond for title, to be made on full payment.

The note was indorsed by the Tottens to William Willis, who, for valuable consideration, transferred and delivered it to H. B. Tombs, who, on the twenty-sixth day of September, 1866, brought suit to foreclose the lien. This suit was dismissed, on demurrer, at the November term, 1868. Tombs afterwards, for valuable consideration, transferred and delivered the note to complainant, who is now the owner. Meanwhile, said Lorenzo died, in the spring of 1867, and Johnson, in the following September, was appointed administrator of his estate.

On the twentieth of March, 1869, complainant, together with James H. Willis, who has since died, leaving no issue, brought another suit, to obtain a decree upon said note. This suit also was dismissed by the court below upon demurrer. Complainant appealed to this court, where, as the bill states, the decree was modified; and it was directed that the bill be dismissed without prejudice. The mandate,

as the bill goes on to show, was filed in the court below at the March term, 1872, "with leave of said court to file a new or amended complaint in this behalf."

It is further alleged that said Paralee "has duly signed, sealed and acknowledged, in due form of law, a deed with general warranty to said lands, to the heirs and legal representatives of said Lorenzo D. Hewitt, and that said deed has been duly tendered to the said heirs and legal representatives," with demand of payment of the residue of the purchase money; and complainant tenders by her bill, and offers to file in open court, said deed, which she refers to as marked exhibit "B." The deed, however, does not appear in the transcript.

The prayer is for judgment for the amount due on the note, and for general relief.

The administrator demurred, assigning for causes:

I. Want of equity in the bill.

II. Bar of the statute of limitations.

III. The same bar, before the beginning of the suit of the twentieth of March, 1869.

IV. Want of mutuality in the contract of sale, the land being separate property of the wife, against whom he could not have enforced specific performance.

It may be remarked in passing, that the Code does not authorize this style of pleading. All the causes assigned are included in the first, which is the *fifth* cause for which a demurrer may be taken under *section 4564 of Gantt's Digest*, to-wit: "That the complaint does not state facts sufficient to constitute a cause of action." All that follows, simply serves to call the attention of the court to the *reasons* why the demurrer for want of equity should be sustained. They do not vitiate, but tend to render demurrers argumentative.

The fourth cause of demurrer is a speaking one. The bill nowhere alleges that Paralee Totten was a married woman; nor is there any expression in it from which the court would be authorized to presume such fact. She may have been the sister, or cousin, of James L. Totten. Having the same patronymic, does not establish the marital relation between a male and female, although she may have property for her sole and separate use. As the bill stands, no question can arise of the *mutuality* of the contract, or the *validity of the deed* tendered; and the demurrer, on those grounds, could not be sustained.

Nevertheless, it is doubtless true, in fact, although we can not know it as a court, that Paralee Totten *was* the wife of James L. at the time of the sale. The court and attorneys, perhaps, knew the parties, and did not observe the omission of such an allegation. We deem it advisable to meet the points which would be raised upon proper allegations of coverture. There has been, in the United States, a conflict of authority as to the power of a married woman, under such laws as obtained here in 1859, to bind herself by a title-bond. The point has never been directly presented to this court in such manner as to have required an authoritative decision, but expressions have been used to indicate a leaning to the line of authority which holds her incompetent, generally, to enter by any mode, into an executory contract binding her lands.

Conceding this to be established here, to the extent at least of its application to lands of which she was seized, generally, and with regard to which she remained under the common law disabilities, it is unnecessary now to inquire how far it would apply to that peculiar separate estate for her sole and separate use, concerning which she has, for more than a hundred years, been considered competent in

equity to contract, independently of statute.    Suffice it to say, that one who receives property from a married woman, under such a contract, whether valid or invalid, and enters upon it, and enjoys it for years, will not be heard in a court of equity to plead that it has not been binding upon her; or to refuse payment, upon her tender of a sufficient deed. It would be in effect a fraud upon the vendor.    The claim is really to enforce the collection of a debt, through the security of the land.    The objection amounts to want of consideration, which the defendant would not be allowed to plead without giving up the land, and accounting for rents and profits.    The demurrer could not be sustained on the ground of want of mutuality.    If a good deed had been tendered, the defendant would have then already had all which a right of action could have given him against one undoubtedly bound, and the contract would, on the part of the vendor, have been fully performed.    The equitable defense of want of mutuality has no place, except where the defendant has never received the benefit of the contract on his part, and never had the right to enforce it.    If he has received them, his measure is full.    If he has had the right to enforce them, there has been mutuality of obligation.

But it was essential to complainant's cause of action upon the supposition which we now entertain of the vendor's coverture, that she should either have made the vendors, Totten and wife, parties, so that the legal title might, on payment, be divested from them, and vested in defendants, or have shown that Paralee had become discovert before the execution of the deed tendered, or have tendered a deed executed by herself *and her husband.*    If she were not discovert, the deed executed by herself alone would not, under our statute, give defendants the complete legal estate to which they were entitled.    If the coverture had been al-

leged, the want of a sufficient deed, together with the want of parties, would have been fatal to the equity of the bill, and the demurrer on this point would be good.

The note was due on the first day of January, 1860. At the time suit was brought by complainant and James H. Willis, on the twentieth of March, 1869, neither the debt, nor the right to subject the land to its payment, in equity, had been barred by statute of limitations. The period of four years, ten months and twenty-seven days, must be excluded from the calculation, that being the period during the war when the statute was suspended.

The bill alleges, in effect, and the demurrer admits, that said suit was dismissed in the court below, brought here on appeal, and remanded, with instructions to dismiss without prejudice,—that the mandate was filed in the court below, " with leave of said court," which we understand to have been granted at the time of filing the mandate, "to file a new or amended bill in this behalf." This court will not, *upon demurrer*, look into its own records in another case. Taking the allegations, in this regard, as admitted by the demurrer, it follows: that the circuit court, having, by the mandate, again acquired jurisdiction, and having given the leave, the order to that effect must stand until reversed. If erroneous, it should have been corrected by another appeal. It can not be collaterally attacked. Decisions of inferior courts, made within the scope of their jurisdiction, must, however erroneous, be respected, not only by litigants and all other persons, but by all other tribunals, as *res judicatæ*, until reversed, otherwise they would fall into contempt, and nothing could be put at rest. Unless the inferior courts transcend their jurisdiction, or unless their decisions be reversed, this court will, itself, set the example and require all other tribunals and persons,

also, to respect their authority. This bill was filed within a few months of said leave being given, and no statute bar can be interposed in disregard of the permission.

But, aside from that permission, it is well, whilst the case is here, although not strictly necessary, to inquire whether this suit would appear to be barred, irrespective of all intervening suits. With respect to *all* the issues upon the statute, the defendants holding under a title bond to their intestate, and ancestor, stand as if he had given a mortgage upon the land to secure the debt, and remained in its possession and enjoyment.

The debt itself would appear to be barred in 1872, and no action could be brought at law. But the bar of the debt, does not necessarily preclude a mortgagee, or vendor, retaining the legal title, from proceeding, *in rem*, in a court of equity to enforce his specific lien upon the land itself. He has an interest in the land to the extent of his lien; a grasp upon it, which nothing but the bar of adverse possession for the statutory period, can relax. He may neglect the debt at law, and rely upon the lien. He need not make probate of it in case of the mortgagor's death. He ceases, in such case, to claim a debt, but claims instead thereof, that he has a right to hold and enforce his legal title, unless a certain sum of money be paid. Unless the defendant can show that the lien has been in some way discharged and extinguished, or lost upon some equitable principles, such as estoppel, he can only interpose the bar of adverse possession of the land, for such time as would bar the action at law for its recovery. When does adverse possession begin? The rule as laid down in Mr. Washbourne's work on *Real Property* (*vol. 2, p. 158*), is, that "between the mortgagor and mortgagee, as long as the latter does not treat the former as a trespasser, the posses-

sion of the mortgagor is not hostile to, or inconsistent with, the mortgagee's right. The possession of the mortgagor is, to this extent, the possession of the mortgagee." The result of the cases *at law,* in England, with regard to adverse possession, in such case, is announced in a note to the case of *Patridge v. Bere, 5 Barnwell & Alderson, 604,* where the cases are collected. It is there said, that where the mortgagor remains the actual occupant, with the consent of the mortgagee, he is strictly *tenant at will.* If the tenancy "be determined by the death of the mortgagor, and *his heirs or devisees enter and hold* without any recognition of the mortgagee's title, by payment of interest, or other act, an *adverse possession* may be considered to take place." In the case before us, adverse possession, under this rule, could not have commenced before the spring of 1867, which was less than seven years before the beginning of this suit. That is the time when the purchaser (or, in effect, the mortgagor) died. An action of ejectment for the legal title would not have been barred.

Mr. Story, in his work on *Equity Jurisprudence (section 1028 b.),* after stating that an equity of redemption, in equity, could not be enforced against the mortgagee in possession, after twenty years, says : " If the mortgagee has suffered the mortgagor to remain in possession for twenty years after the breach of the condition, without any payment of interest, or admission of the debt, or other duty, the right to file a bill for foreclosure will, *generally,* be deemed to be barred or extinguished." He remarks, however, that the bar is not positive, but open to be rebutted by circumstances.

The cases cited by the learned commentator do not go to the extent of fixing the time of default as the date from which the statute of limitation would commence running

to protect the mortgagor in possession, but proceed rather upon the ground of staleness of the demand, and upon such peculiar circumstances in each case, as raised a presumption, either that the original debt was invalid, or had been settled. In other words, equity will not, in any doubtful matter, aid a mortgagee who has slept upon his rights for the long period of twenty years, although no point can be fixed at which the possession of the mortgagor may be said to have become adverse.

The result of the English cases at law and equity, taken together, is, that the statute of limitations will not commence running to protect a mortgagor in possession, after default; or rather that his possession is not to be deemed adverse until he makes some claim, or does some open and notorious act adverse to the rights of the mortgagee; or until he dies, and there be an entry and possession by the heirs, without some positive act, like payment of rent, recognizing the mortgagee's debt, and showing the acquiescence of the heirs therein. But if the mortgagee should allow his claim to lie dormant for twenty years, without any recognition of it by the mortgagor in possession, it will be considered a stale demand; and the neglect will raise the presumption (which, however, will not be conclusive), that the debt could not originally have been enforced, or has been paid. See cases of *Trash v. White, 3 Bro. Ch. Rep., 289*, and the remarks of Sir Thomas Plumer, master of rolls in *Christopher v. Sparkes, Jacob & Walker, 223*. To like effect, see, also, the New Jersey case of *Barned v. Barned, 6 C. E. Green, 245*, in which the presumption of payment after twenty years is conceded; but it is further intimated, not to be conclusive (as is case of a statute bar), but liable to be rebutted by circumstances explaining the delay. And so, also, by this court, in the case of *Bernie et*

*al. v. Maine, 29 Ark., 591,* it was held that the possession of the mortgagor was that of the mortgagee, and there must be open and notorious denial of the latter's title to constitute an adverse holding, and set the statute of limitations to running.

The principle is a wholesome one for both parties, as it enables the mortgagee (or vendor by title bond) to rest securely on his legal title, and indulge the mortgagor, or purchaser; whilst the latter can easily, upon payment, procure the legal title, or have satisfaction of the mortgage entered of record under the statute; and even if he should neglect this, a court of chancery would not entertain a stale demand for foreclosure after many years, without clear proof rebutting the presumption of payment; or, if the mortgagor should die, and the heirs should enter without recognition of the mortgagee's rights, the statute of limitations would commence running as in case of adverse possession.

In no aspect of this case, does it appear from the bill, that the right to enforce the lien is barred by the statute.

The court erred in sustaining the demurrer. Reverse the decree, and remand the cause, with leave to complainant, if so advised, to amend her bill, and for further proceedings consistent with this opinion.