HARDIN, Administratrix, & Others *v.* BOYD, Administrator, & Others.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF ARKANSAS.

Submitted December 22, 1884.—Decided March 15, 1885.

No rule can be laid down in reference to amendments of equity pleadings that will govern all cases. They must depend upon the special circumstances of each case, and in passing upon applications to amend, the ends of justice must not be sacrificed to mere form or by too rigid an adherence to technical rules of practice.

In a suit brought by the heirs and administrator of a vendor of land by title bond, the bill alleged that the bond had been obtained by fraud, and, also, that the land had not been fully paid for according to the contract of sale. Its prayer was, among other things, that the bond be cancelled; that an account be taken of the rents and profits which the purchaser had enjoyed, and of the amount paid on his purchase; that the title of the complainants be quieted; and that they have such other relief as equity might require. At the final hearing the complainants were permitted to amend the prayer of the bill so as to ask, in the alternative, for a decree for the balance of the purchase money and a lien on the land to secure the payment thereof: *Held,* That no error was committed in allowing the amendment. It did not make a new case, but only enabled the court to adapt its relief to that

---

made by the bill and sustained by the proof. The bill, with the prayer thus amended, was in the form in which it might have been originally prepared consistently with the rules of equity practice.

The case distinguished from *Shields* v. *Barrow*, 17 How., 130.

Although the debt for unpaid purchase money was barred by limitation under the local law, the lien therefor on the land was not barred ; for there was no such open adverse possession, 'for the period within which actions for the recovery of real estate must be brought, as would cut off the right to enforce the equitable lien for the purchase money.

This was a bill in equity to set aside a conveyance of lands, or (as amended below) in the alternative for payment of the purchase money and to make it a lien on the lands.

The main question on this appeal relates to the alleged error of the Circuit Court in permitting the complainants, at the hearing, to amend the prayer of their bill, so as to obtain relief not before specifically asked, and, which appellants contend, is inconsistent with the case made by the bill. To make intelligible this and other questions in the cause, it is necessary to state the issues and the general effect of the evidence.

On the 28th day of March, 1871, John D. Ware executed his title bond to William D. Hardin, reciting the sale to the latter of cert in lands in Crittenden County, Arkansas, for the sum of $20.000, one-half of which was to be paid at the delivery of the bond, and the remainder, on the 1st day of January thereafter, in county scrip or warrants; and providing for a conveyance to the purchaser, when the purchase money should be fully paid. Ware died, at his home in Tennessee, on the 6th day of December, 1871. In the same month, the Probate Court of Crittenden County appointed L. B. Hardin (a brother of the purchaser) to be administrator of Ware ; and, on the 15th of January, 1872, his bond having been on that day filed and approved, letters of administration were directed to be issued. Under date of the 23d day of January of the same year, L. B. Hardin, in his capacity as administrator, executed to the purchaser an absolute conveyance of all the right, title and interest of Ware in the lands. The deed recited the payment by the grantee to the said administrator of $10,000 in Crittenden County scrip and warrants, and that the deed was made in conformity with an order of the Probate Court.

The general statutes · of Arkansas declare that " when any testator or intestate shall· have entered into any contract for the conveyance of lands and tenements in his lifetime, which was not executed and performed during his life, and shall not have · given power by will to carry the same into execution, it shall be lawful for the executor or· administrator of such testator or intestate, with the approval of the court in term time, to execute a deed of conveyance of and for such lands, pursuant to' the terms of the original contract; such executor or administrator being satisfied that payment has been made therefor, according to the contract, and reciting the fact of such payment to the testator or intestate, or to such executor or administrator, as the case may be, which deed may be acknowledged as other deeds, and shall have the same force and effect to pass the· title of such testator or intestate to any such lands as if made pursuant to a decree of court."  Act Feb. 21, 1859 ; Gantt's Dig. 180.

By deed· of July 10, 1877, W. D. Hardin conveyed these lands to his wife, and they were in possession, by tenants, when the present suit was instituted on the 28th of October, 1881.   The complainants are the heirs at law of the vendor and one Boyd, his administrator, the latter having been appointed at the last domicil of the decedent in Tennessee.   The defendants were W. D. Hardin and his wife and their tenants. The bill proceeds upon these grounds : That Ware's obligation of March 28, 1871, was obtained through fraud and imposition practised by the purchaser ; that the latter was at liberty, according to the real agreement between him and Ware, to pay the entire purchase money in county scrip or warrants ; that he and his wife were in possession, claiming the lands to be the absolute property of the latter, although no part of the purchase money had been paid, except $5,400 paid to the intestate in county scrip or warrants at their face value ; that no such proceedings as are recited in the deed to W. D. Hardin, were ever had in . the Probate Court of Crittenden County ; that the $10,000 in scrip or warrants, which the deed states was paid by W. D. Hardin, were disposed of at private sale for fifteen cents on the dollar of their face· value, and the proceeds applied, by

collusion between the purchaser and his brother, to a claim which they, acting together, fraudulently procured to be allowed in favor of W. D. Hardin against Ware's estate, when, in fact no such indebtedness existed; that all the papers relating to the estate of Ware were destroyed by Hardin, while in his custody as clerk of the Probate Court, for the purpose of concealing his fraudulent scheme to obtain the lands without paying for them; that the deed from Hardin to his wife was without consideration; and that Hardin, after he took possession of the lands, appropriated to his own use all the rents annually accruing therefrom.

The prayer of the bill was that " the said bond for title, and the said deeds made by Lucian B. Hardin to said Wm. D. Hardin, and by the latter to said Lida Hardin, his wife, may be set aside for fraud; that an account may be taken of the said rents and profits, and of the value of the county warrants delivered by said William D. Hardin, and that your orators may have a personal decree against said defendants for any balance that may be found to be justly due to them; that a decree may be rendered quieting the title of the plaintiff herein to said lands against said claims of the said defendants, and for such other relief as equity may require."

Hardin and wife filed separate answers, and also pleas relying upon the statute of limitation in bar of the suit. They also demurred to the bill upon numerous grounds.

A good deal of evidence was taken touching the physical and mental condition of Ware at and before the execution of his title bond, as well as upon the issue, as to whether Hardin had paid for the lands according to contract. Without detailing all the facts, it is sufficient to say that, according to the weight of the evidence, the payment to Ware of $5,400 in county scrip or warrants was the only one ever really made on Hardin's purchase of these lands, and that the alleged payment subsequently of $10,000 in like scrip or warrants to L. B. Hardin, administrator, was not intended to be a payment on the land, because the proceeds of their sale were, by collusion between him and W. D. Hardin, appropriated by the latter on a fictitious claim asserted by him against Ware's estate.

Such was the state of the record when the cause came on for hearing. After the evidence was read the complainants asked leave to amend the prayer of the bill by inserting therein the following words : " Or, if thought proper, that the court give a decree for the purchase-money due on said lands, and that the plaintiffs be decreed to have a lien on said lands for the payment thereof, and that said lien be foreclosed." This amendment was allowed, and the defendants excepted. And thereupon the court, having heard the evidence and the argument of counsel, rendered a final decree, and adjudging that W. D. Hardin was indebted to B. P. Boyd, administrator of Ware, in the sum of $17,150 on the purchase-money for the lands and that complainants have a lien thereon for its payment, relating back to the date of the title bond. The deeds from L. B. Hardin, administrator to W. D. Hardin, and from the latter to his wife, were cancelled for fraud, and the land ordered to be sold in satisfaction of the lien ; no sale, however, to take place until the heirs of Ware should file in court a warranty deed for the lands. The court refused to give a personal decree for the balance of the purchase-money, " the same being barred by the statute of limitations." Subsequently, the heirs of Ware filed the required deed in court, and the decree was made absolute.

Hardin appealed to this court. After the appeal was perfected he departed this life, and, by consent, it was revived in the name of Mrs. Hardin, as his administratrix. After the submission of the cause here the heirs-at-law of Hardin appeared, and by consent they were made co-appellants without opening the submission.

*Mr. B. C. Brown, Mr. Thomas M. Peters* and *Mr. O. P. Lyles* for appellants argued the case on its merits, including several questions not noticed in the opinion of the court. On the effect of the statute of limitations on the claim, they cited *Birnie* v. *Main,* 29 Ark. 591 ; Gantt's Digest, § 4113 ; *Lupten* v. *Janney,* 13 Pet. 381 ; *Underhill* v. *Mobile Fire Department Insurance Co.,* 67 Ala. 45. As to the amendment, they said : The amendment allowed by the chancellor in the prayer of the

original bill, after the trial had commenced, was improper. The amendment made a new case, and was repugnant to the prayer of the original bill. The original bill was for a cancellation of the sale, and the amendment was to enforce it. It deprived the defendant Hardin of the opportunity of showing upon the new issue thus presented that the whole purchase-money was fully paid. The question of payment vel non had been presented in the original bill as an evidence of fraud. This he had fully met. The relief in the two cases is not precisely the same, *Shields* v. *Barrow*, 17 How. 130; *Waldren* v. *Bodley*, 14 Pet. 156; *Sneed* v. *McCool*, 12 How. 407; Story Eq. Pl. § 256; *Lehman* v. *Meyer*, 67 Ala. 396; *Micou* v. *Ashurst*, 55 Ala. 607; 1 Daniel Ch. Pr. 328–385; *Rives* v. *Walthall*, 38 Ala. 329.

*Mr. U. M. Rose* for appellees.

MR. JUSTICE HARLAN, after stating the foregoing facts, delivered the opinion of the court:

In reference to amendments of equity pleadings the courts have found it impracticable to lay down a rule that would govern all cases. Their allowance must, at every stage of the cause, rest in the discretion of the court; and that discretion must depend largely on the special circumstances of each case. It may be said, generally, that in passing upon applications to amend, the ends of justice should never be sacrificed to mere form, or by too rigid an adherence to technical rules of practice. Undoubtedly, great caution should be exercised where the application comes after the litigation has continued for some time, or when the granting of it would cause serious inconvenience or expense to the opposite side. And an amendment should rarely, if ever, be permitted where it would materially change the very substance of the case made by the bill, and to which the parties have directed their proofs. The rule is thus stated in *Lyon* v. *Talmadge*, 1 Johns. Ch. 184, 188 : " If the bill be found defective in its prayer for relief, or in proper parties, or in the omission or statement of fact or circumstance connected with the substance of the case, but not forming the substance itself, the amendment is usually granted. But the substance of the bill must contain ground for relief. There must be equity in

the case, when fully stated and correctly applied to the proper parties, sufficient to warrant a decree." And, in 1 Daniells Ch. Pr. 384, 5th ed., the author, after alluding to the rule in reference to amendments, observes: "The instances, however, in which this will be done are confined to those where it appears, from the case made by the bill, that the plaintiff is entitled to relief, although different from that sought by the specific prayer; when the object of the proposed amendment is to make a new case, it will not be permitted." Whether the amendment in question changed the substance of the case, or made a new one, we proceed to inquire.

The original bill in this suit, certainly states facts entitling complainants to some relief. He and his wife were in possession, asserting title, freed from all claim, of whatever kind, upon the part either of the heirs or of the estate of Ware. The complainants evidently supposed that the relief to which they were entitled was a cancellation, upon the ground of fraud, of Hardin's contract of purchase, as well as of the deeds to him and his wife, with an accounting that would embrace, on one side, the rents and profits derived from the lands, and, on the other, the value of the scrip or warrants that he had delivered in part payment of the purchase-money. But if it were doubtful whether the evidence was sufficient to justify a decree setting aside the contract upon the ground of fraud or imposition practised upon the vendor, and if the evidence clearly showed that the purchaser had not fully paid for the lands, according to the terms of his purchase, should the complainants have been driven to a new suit in order to enforce a lien for the unpaid purchase-money? And this, too, after the parties had taken their proofs upon the issue, distinctly made by the pleadings, as to the amount of the purchase-money really due from Hardin? Such practice would have done no good to either party, and must have resulted in delay and additional expense to both. A new suit to enforce a lien on the land would have brought before the court the same evidence that was taken in this cause as to the amount Hardin had paid. When leave was asked to amend the prayer for relief, no objection was made by the defendant; but the amendment having been allowed, he excepted,

but without any suggestion of surprise or any intimation that he was able or desired to produce additional proof upon that issue. Apart from the allegations in reference to fraud in obtaining the title bond, the bill made a case of non-payment of the greater part of the purchase-money. To amend the prayer of the bill so as to justify a decree consistent with that fact, did not make a new case, nor materially change the substance of the one actually presented by the bill and the proofs. It served only to enable the court to adapt its measure of relief to a case distinctly alleged and satisfactorily proved. The complainants could thereby meet the objection, which otherwise might have been urged, that the nature of the specific relief originally asked precluded the court from giving, under the general prayer, the particular relief which the amendment and the proof authorized.

It is a well-settled rule that the complainant, if not certain as to the specific relief to which he is entitled, may frame his prayer in the alternative, so that if one kind of relief is denied another may be granted; the relief, of each kind, being consistent with the case made by the bill. *Terry* v. *Rosell*, 32 Ark. 478; *Colton* v. *Ross*, 2 Paige, 396; *Lloyd* v. *Brewster*, 4 Paige, 537, 540; *Lingan* v. *Henderson*, 1 Bland, 236, 252; *Memphis* v. *Clark*, 1 Sm. & Marsh, 221, 236. Under the liberal rules of chancery practice which now obtain, there is no sound reason why the original bill in this case might not have been framed with a prayer for the cancellation of the contract upon the ground of fraud, and an accounting between the parties, and, in the alternative, for a decree which, without disturbing the contract, would give a lien on the lands for unpaid purchase-money. The matters in question arose out of one transaction, and were so directly connected with each other, that they could well have been incorporated in one suit involving the determination of the rights of the parties with respect to the lands. The amendment had no other effect than to make the bill read just as it might have been originally prepared consistently with the established rules of equity practice. It suggested no change or modification of its allegations, and, in no just sense, made a new case.

The decision in *Shields* v. *Barrow*, 17 How. 130, is invoked, with some confidence, as authority against the action of the court in allowing the prayer of the bill to be amended. That was a suit to set aside an agreement of compromise on the ground of fraud and imposition, and to restore the complainant to his original rights under a contract for the sale of certain lands and other property. The bill was fatally defective as to parties. No decree could have been based upon it, for indispensable parties were not before the court, and could not be subjected to its jurisdiction. The amendment of the bill, there tendered and allowed by the court of original jurisdiction, not only asked that the compromise, if held binding, be specifically enforced, but it brought into the case entirely new issues of fact and law, and made an additional defendant, in his individual capacity and as tutor of his minor children The relief sought by that amendment was, therefore, not within the case set out in the original bill. Nor was the application there, as here, simply to amend the prayer of the bill, so as to ask, in the alternative, for specific relief within the case as originally presented. It was regarded by this court as an attempt, under the cover of amendment, to change the very substance of the case. That such was its view upon the point necessary to be decided is clear from the opinion, for the court said: "To strike out the entire substance and prayer of a bill, and insert a new case by way of amendment, leaves the record unnecessarily encumbered with the original proceedings, increases expenses, and complicates the suit; it is far better to require the complainant to begin anew. To insert a wholly different case is not properly an amendment, and should not be considered within the rules on that subject." The circumstances of the present case are entirely different from those in *Shields* v. *Barrow*. The amendment here did not introduce new allegations, nor make additional parties, nor encumber the record, nor increase the expenses of the litigation, nor complicate the suit, nor make new issues of fact. It simply enabled the court, upon the case made by the original bill, to give the relief which that case justified. *Neale* v. *Neales*, 9 Wall. 1, 8; *Tremolo Patent*, 23 Wall. 518; *Burgess* v. *Graffam*, 10 Fed. Rep.

216, 219; *Battle* v. *Mutual Life Ins. Co.*, 10 Blatchford, 417; *Ogden* v. *Thornton*, 3 Stewart, (30 N. J. Eq.) 569, 573; *McConnell* v. *McConnell*, 11 Vt. 291.

We are of opinion, for the reasons stated, that the amendment of the prayer of the bill was properly allowed, and that there was no error in adjudging that Ware's estate had a lien on the land for the balance of the purchase-money. The deed to W. D. Hardin, and the deed of the latter to his wife, having been properly cancelled, the legal title remained in the heirs of the vendor. They are not bound to surrender that title except upon the performance of the conditions upon which their ancestor agreed to convey, viz., the payment of the purchase-money. According to the local law, they occupied the position of mortgagees; for, "the legal effect of a title bond is like a deed executed by the vendor and a mortgage back by the vendee." *Holman* v. *Patterson's Heirs*, 29 Ark. 363; *Martin* v. *O'Bannon*, 35 Ark. 68. The heirs of Ware held the title in trust for the purchaser, while Hardin was a trustee for the payment of the purchase-money. *Schall* v. *Biscoe*, 18 Ark. 142, 157; *Moore* v. *Anders*, 14 Ark. 628; *Holman* v. *Patterson*, 29 Ark. 363; *Bayley* v. *Greenleaf*, 7 Wheat. 46, 50; *Boone* v. *Chiles*, 10 Pet. 177, 225; *Lewis* v. *Hawkins*, 23 Wall. 119, 126; 1 Story Eq. Jur., § 1217 *et seq.;* 2 Sugden Vendors, 375, ch. 19, n. d.

But it is contended that the debt for unpaid purchase-money, as well as the lien claimed therefor, are equally barred by the statute of limitations of Arkansas. An action to recover the debt may be barred by limitation, yet the right to enforce the lien for the purchase-money may still exist. *Lewis* v. *Hawkins*, 23 Wall. 119, 127; *Birnie* v. *Main*, 29 Ark. 593; *Colcleugh* v. *Johnson*, 34 Ark. 312, 318. In the case last cited the Supreme Court of Arkansas said: "The debt itself would appear to be barred in 1872, and no action could be brought at law. But the bar of the debt does not necessarily preclude a mortgagee or vendor retaining the legal title from proceeding *in rem* in a court of equity to enforce his specific lien upon the land itself. . . . Unless the defendant can show that the lien has been in some way discharged and extinguished, or lost upon some

equitable principles, such as estoppel, he can only interpose the bar of adverse possession of the land for such time as would bar the action at law for its recovery." In the same case it was held that, as between mortgagor and mortgagee, the possession of the mortgagor is not inconsistent with the mortgagee's right so long as the latter does not treat the former as a trespasser; that where the mortgagor remained the actual occupant with the consent of the mortgagee he was strictly tenant at will; that if the tenancy be determined by the death of the mortgagor, and his heirs or devisees enter and hold without any recognition of the mortgagor's title by payment of interest or other act, an adverse possession may be considered to take place. "The principle," said the court, "is a wholesome one for both parties, as it enables the mortgagee (or vendor by title bond) to rest securely on his legal title, and indulge the mortgagor or purchaser, whilst the latter can easily, upon payment, procure the legal title, or have satisfaction of the mortgage entered of record under the statute; and even if he should neglect this, a Court of Chancery would not entertain a stale demand for foreclosure after many years without clear proof rebutting the presumption of payment; or if the mortgagor should die and the heirs should enter without recognition of the mortgagee's rights, the statute of limitations would commence to run as in case of adverse possession." When did adverse possession begin in the present case? Not when Hardin took possession of the land, for he went into possession in the lifetime of the vendor, and with his consent. The claim of adverse possession cannot be based either upon the alleged proceedings in the Probate Court purporting to authorize and direct the administrator of Ware to execute a deed to Hardin, or upon the deed which was made to him by such administrator; for, according to the weight of evidence, no such action was ever taken by the court and, by its order, made a matter of record, and that deed, although filed for record, was never recorded during the period when Hardin held the office of clerk of that court, nor until 1877. So that there was nothing upon the public record of conveyances, as shown at the hearing, nor in any of the circumstances attending Hardin's possession, prior

to the conveyance to his wife, that showed such open, notorious adverse possession of the land as was requisite to change the relations originally existing between the vendor and purchaser, or between the latter and the heirs of the former. Hardin's possession under the deed of the administrator was simply a continuation of the possession originally obtained with the consent of his vendor. If it be said that Mrs. Hardin's possession under the deed from her husband was, upon her part, an assertion of title adverse to any claim that Ware's estate had, it may be answered that such possession commenced less than seven years prior to the bringing of this suit, which is the period within which the statutes of Arkansas require action or suits to be brought for the recovery of real estate.

It is objected to the decree that the value of the county scrip or warrants, which the court found had not been delivered by Hardin in payment for the land, should have been ascertained upon the basis of value as alleged in the original bill, namely, ten cents on the dollar; and this, although the answer placed their value at seventy-five cents. According to the preponderance of evidence they were worth about seventy cents on the dollar of their face value. The court was not obliged to accept the allegations of value in the pleadings, and should have been controlled, on this point, by the evidence. We do not perceive any error in the aggregate amount ascertained to be due, taking the two instalments of purchase-money at the market value of the scrip or warrants, in which they were payable, at the time they were respectively due, and giving interest upon those amounts from the maturity of each instalment.

Some time after the decree Hardin filed a petition for rehearing, submitting therewith copies of numerous papers (alleged to have been lost at and before the final hearing) purporting to relate to a suit instituted by the heirs of Ware in the Crittenden Circuit Court against L. B. Hardin for the purpose of having him removed as administrator, or preventing his interfering with the assets of the estate. The record of that suit, it was alleged in the petition for rehearing, disproved the principal grounds upon which the decree in this case was rested. Without assenting to this view, and without comment-

ing upon the failure of the petition to disclose the circumstances under which the papers alleged to have been lost were found, it is sufficient to say that the granting of a rehearing was a matter within the discretion of the court below, and not to be reviewed here.

Other questions are discussed in the briefs of counsel, but we have noticed all that we deem of importance.   There is no error in the decree, and it is

*Affirmed.*