## FINANCE COMPANY OF AMERICA AT BALTIMORE v. LAMSON BROS. CO.

No. 6734.

Circuit Court of Appeals, Sixth Circuit.

June 29, 1935.

Gustavus Ohlinger, of Toledo, Ohio (Smith, Beckwith, Ohlinger & Froehlich, of Toledo, Ohio, on the brief), for appellant.

H. W. Fraser, of Toledo, Ohio (Fraser, Hiett, Wall & Effler, of Toledo, Ohio, on the brief), for appellee.

Before MOORMAN, HICKS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

Bill in equity for specific performance of a contract. An amended cross-bill was filed, praying for reformation. The District Court ordered the contract reformed, and referred the case to a special master to determine what equitable conditions, if any, in favor of appellant should attach as a condition to the granting of reformation. The report of the special master, confirmed by the court, found the equities to be equal, and concluded as a matter of law that the court should leave the parties where it found them. The court accordingly dismissed the bill.

The appellant is a finance company and the appellee owns and operates a department store in Toledo, Ohio. The Tracy Realty Company is a corporation in which appellee's principal stockholders own the entire stock.

The action is based upon a contract executed February 13, 1932, providing for the purchase by appellant of appellee's accounts receivable for $187,500. This so-called purchase in fact constituted a loan of $187,500 by appellant to appellee, $37,500 of which was at once returned to appellant as a bonus. The answer alleged in substance that this contract should be binding only if and when the Superintendent of Banks of Ohio should agree to and should accept the sum of $150,000 in full settlement and discharge of indebtedness of approximately $400,000 owed by the appellee and The Tracy Realty Company to The Ohio Savings Bank & Trust Company and The Security-Home Trust Company, which institutions were then closed and in charge of the Superintendent of Banks of Ohio; that on March 31, 1932, the Superintendent of Banks refused to accept the settlement,

and that the appellee notified the appellant of this fact. The cross-bill prayed for certain relief not material here.

Subsequent to the trial the court permitted an amendment to the cross-bill, praying that the contract be reformed by inserting therein the condition above set forth, upon the ground that it had been omitted by mutual mistake or by mistake on the part of appellee, coupled with knowledge and inequitable conduct on the part of appellant.

■ Appellant urges that the court erred in allowing the amendment. This contention is untenable. The condition which the amended cross-bill prayed to have inserted in the contract was the precise condition originally pleaded by appellee. As to the main point at issue, namely, the existence of the condition, the amendment did not modify the allegations of the answer and cross-bill. No new parties were joined. The cause was tried exactly as it would have been tried if the original answer and cross-bill had embodied the amendments allowed. Under such circumstances, amendment will be allowed upon final hearing (Hardin, Adm'rx, v. Boyd, Adm'r, 113 U. S. 756, 5 S. Ct. 771, 28 L. Ed. 1141) or even after final decree (Tremaine v. Hitchcock & Co., 23 Wall. 518, 23 L. Ed. 97). Appellant did not suggest surprise. The court, upon allowing the amendment, permitted either party to present additional testimony. Appellant did not avail itself of this opportunity. The allowance of the amendment was not error.

■ Where a contract fails to express the actual agreement of the parties correctly by reason of mutual mistake or mistake on the part of one and fraud or inequitable conduct on the part of the other, equity will reform the instrument. Columbian National Life Ins. Co. v. Black, 35 F.(2d) 571, 71 A. L. R. 128 (C. C. A. 10); International Harvester Co. v. Mississippi Land Co., 43 F.(2d) 17 (C. C. A. 8).

■ Evidence to establish reformation must be clear, unequivocal and convincing. Philippine Sugar Estates Development Co., Ltd., v. Government of the Philippine Islands, 247 U. S. 385, 38 S. Ct. 513, 62 L. Ed. 1177; Hunt v. Triplex Safety Glass Co. of North America, Inc., 60 F.(2d) 92 (C. C. A. 6).

■ The application of these principles necessitates a review of the record.

A memorandum and two letters, all written by appellant prior to January, 1932, show that it then knew that appellee desired to borrow money to settle these bank loans, and that appellant required the "sanction" of the Superintendent of Banks as a prerequisite to consideration of the loan. In the early negotiations appellant offered to lend $200,000 to appellee, which amount the Superintendent of Banks had agreed to accept in full settlement. Certain changes in the terms of the loan were demanded by appellant, and this loan was never consummated.

With reference to the contract actually executed, witnesses for both parties testified in substance that the condition was understood to be a part of the agreement. Three witnesses for appellee declared in effect that in the preliminary negotiations it was stated that appellee would not enter into a deal of this kind unless it could clean up the bank situation, and that if the Superintendent of Banks did not agree to the compromise, as Wall, attorney for appellee said, the whole transaction would be "unwound." Gill, attorney for appellant, testified that it was very clear that these gentlemen were borrowing this money for the purpose of settling with the Superintendent of Banks, and also said, "I always knew that this money was wanted for the purpose of settling with the Banking Department of Ohio."

Eliasberg, appellant's president, requested Wall to give an opinion as to the legality of the transaction. This opinion was submitted to appellee's directors prior to their approval of the contract, and was later delivered to Gill in Baltimore. It contained the following clause:

"We are of the opinion that when said papers have been duly executed and delivered, * * * and when your company has advanced the funds specified therein, and when the Superintendent of Banks of Ohio has accepted the proposition of The Tracy Realty Company and The Lamson Brothers Company to settle all indebtedness of said two companies to The Ohio Savings Bank & Trust Company and The Security-Home Trust Company, then said papers and documents will constitute valid contracts and will be binding upon all of the corporations and persons parties thereto."

A long-distance telephone conversation was held between the parties after the

opinion and the papers had been delivered to appellant and examined by its officers. In that conversation nothing was said with reference to repudiating the understanding that the condition was a part of the contract. The execution of the contract immediately followed. Thereafter the $150,000 was deposited by appellant in the Baltimore Trust Company, subject to the order of the Banking Department of Ohio upon presentation of the cancelled notes due the banks from appellee and the Tracy Company. On March 4, 1932, Eliasberg telegraphed asking for the status of the compromise with the Banking Department.

The record establishes by the requisite degree of proof that the agreement was contingent upon acceptance of the settlement by the Superintendent of Banks, and that by mutual mistake the parties failed to incorporate this provision into the contract sued upon as written and signed. Hence reformation was proper. Newport News Shipbuilding & Dry Dock Co. v. Isherwood, 5 F.(2d) 924 (C. C. A. 4).

The decree of the District Court is affirmed.