## Case No. 2,325.

### CALLOWAY v. DOBSON.

[1 Brock. 119.] [1]

Circuit Court, D. Virginia. May Term, 1807.

AMENDMENT OF EQUITY PLEADINGS.

Motions to amend the pleadings in a cause, either at law or in equity, are always addressed to the *sound discretion of the court*: and this legal discretion seems to acknowledge no other limits than those which are required by the purposes of justice, and for the restraint of gross and inexcusable negligence. But a defendant in equity will not be permitted to amend

[1] [Reported by John W. Brockenbrough, Esq.]

his answer, after the opinion of the court and the testimony have indicated in what respect it may be modified so as to effect his purpose.

[Cited in Tyson v. Belmont, Case No. 14,-315a; Lamb v. Parkman, Id. 8,019; Reed v. Crowley, Id. 11,644; Chamberlain v. Bittersohn, 48 Fed. 42.]

[See Ross v. Carpenter, Case No. 12,072; Cross v. Morgan, 6 Fed. 241.]

At the November term of this court, 1801, a judgment at law was rendered in favour of Matthew and John Dobson, administrators of John Dobson, deceased, who was the surviving partner of Dobson, Daltera & Walker, of Liverpool, against James Calloway, surviving partner of Trents & Calloway. The judgment was rendered in an action of assumpsit, brought to recover a large balance alleged to be due to the Liverpool firm, on closing their very extensive transactions, which had been carried on for a series of years. The defendant at law applied to this court for an injunction to restrain all proceedings upon the judgment, charging the plaintiffs with fraud, in the rendition of their account, and insisting that the remittances in goods, bills, and tobacco sent by Trents & Calloway, to Dobson, Daltera & Walker, would, if they had been disposed of to the best advantage, nearly or entirely have extinguished the balance for which the judgment at law was rendered. The injunction was awarded, and the plaintiff at law, Matthew Dobson, filed a very elaborate answer, denying all fraud, and annexing thereto a detailed statement of sales of tobacco,shipped by Trents & Calloway to Dobson, Daltera & Walker, with which the defendant at law had been credited, drawn from the books of the latter firm; which detailed account, he declared, contained all the tobacco which had been shipped by Trents & Calloway to Dobson, Daltera & Walker, of which the books of the firm contained any evidence. At the November term of this court, 1806, the court rendered the following interlocutory decree: "The court is of opinion, that the account annexed to the defendant's answer of the sales of tobacco, consigned to Dobson, Daltera & Walker, by Trents & Calloway, which is stated by him to be a complete transcript from the books of the former, exhibiting all the entries therein made, relative to the tobaccos which constitute the subject of the controversy. not conforming in the number of hogsheads sold, with the accounts previously rendered, on which the judgment at law was obtained, affords such reason to suspect the verity of those accounts, as to entitle the plaintiff in equity, to submit that circumstance to the consideration of a jury: The court doth therefore direct, that an issue be made up, and tried at the bar of this court, to determine whether the plaintiff be entitled to any, and if to any, what additional credit for ninety-three hogsheads of tobacco, consigned by them to Dobson, Daltera & Walker, and not accounted for in the detailed account of sales annexed

to the defendant's answer." At this term, the defendant moved for leave to file a supplemental answer, upon grounds which are considered in the following opinion.

Before MARSHALL, Circuit Justice, and GRIFFIN, District Judge.

MARSHALL, Circuit Justice. This bill was brought to charge the original defendants, who had obtained a judgment at law on a general account of sales of tobacco, shipped to them by the plaintiff, with unfairness in the rendition of that account, and calls for a detailed account of sales, which would enable the plaintiff to detect the fraud, if any was committed. The present defendant, who is the representative of the surviving partner of Dobson, Daltera & Walker, filed his answer, to which he annexed a detailed account, which, he declared, exhibited all the information contained in the books of his testator. On the hearing of the cause, it appeared that the general account of sales, on which the judgment was rendered, comprehended ninety-three hogsheads of tobacco not included in the detailed accounts; and this difference was considered by the court, as evidence that the tobacco had not really been sold; in consequence of which, an issue was directed, to ascertain the compensation to which the plaintiff was entitled, for tobacco shipped to the testator of the defendant, and not duly credited to him. When informed of this interlocutory decree, the defendant finds among the books of his testator, which was in his possession when the original answer was drawn, further detailed accounts of ninety hogsheads of tobacco, and moves to amend his answer, so as now to avail himself, by way of answer, of these additional accounts.

That a court possesses the power to allow any amendments in the pleadings while a case is depending, is not to be questioned; and this power is liberally exercised, both in courts of equity and common law, for the furtherance of justice. Perhaps the legal discretion which exists in the case, acknowledges no other limit than is necessary for its purposes of justice, and for the restraint of gross and inexcusable negligence. A long course of experience has marked, not indeed with absolute precision, but with some accuracy, the extent of these limits. In courts of common law, amendments to the pleadings have been permitted after the argument of a demurrer, and after the opinion of the court has been understood; and amendments have also been permitted after verdict, when a new trial has been awarded. Although courts of equity seem in general less trammelled by technical rules than courts of law, they exhibit less facility in allowing amendments to an answer, than is exhibited by courts of law, in allowing amendments to pleadings. The instances are rare, in which amendments to an answer have been allowed after a cause has been heard, and there has been any expression of opinion from the court.

The reason is obvious. A change in the pleadings generally promotes and can seldom defeat the justice of the cause; where such change may defeat the justice of the case, a court of law invariably rejects the application for leave to amend. But in equity, the answer of the defendant is testimony of the highest credit, and is often conclusive. The amendment, therefore, may defeat the justice of the case. To allow a defendant, as a general practice, to change his answer, after having discovered precisely, from the opinion of the court and the testimony in the cause, in what manner it may be modified so as to effect his purpose, would certainly be a dangerous mode of proceeding.

In this case, the defendant is required to disclose from books in his possession the names of all the persons to whom the tobacco of the plaintiff was sold, that he may be enabled to examine the purchasers respecting the verity of the account. The defendant withholds this disclosure as to ninety-three hogsheads. After finding, that the consequences of this omission are unfavourable to himself, he offers to make it, and asks to be placed in the situation he would have held had it been made originally. The indulgence requested may promote the justice of the case, but it is apparent it may endanger that justice. The defendant, who is called upon for discovering, may disclose just as much as he pleases, may take the chance of any advantage which the experiment may afford, with the confidence, that its proving unsuccessful will do him no injury. It is extremely probable, that in this case the particular accounts now offered were overlooked, and not purposely concealed. But there is no evidence of this, except the declaration of the defendant himself—a declaration which may be made in every case; admitting it to be true, it implies a gross negligence, which is of a description so calculated for the introduction of fraud, that the general policy of the law may require the person who has committed it to bear the consequences.

It is certainly proper, in such a case, for courts to examine precedents, and to respect them. Those which the research of counsel has produced, have all been considered. The case of Countess of Gainsborough v. Gifford, reported in 2 P. Wms. 424, is certainly one in which an amendment was allowed after a decree, in a point on which the materiality of the amendment had been ascertained by the opinion of the court. But the points of dissimilitude between that case and this are very striking. In that case, upon the first suggestion, that the answer contained the admission which was relied on, and before any opinion of the court was avowed, the mistake was asserted and in a great measure proved. In this the mistake is only mentioned after the opinion of the court has disclosed the effect of the omission. In that case, the amendment only restored the answer to its original form, it

only replaced the averment which the answer originally contained, which the defendant supposed and had a right to suppose that it still contained. In this, it introduces new and important matter which was at the time in the power of the defendant, and ought to have been originally inserted. In that case, the mistake was conclusively shown by unexceptionable testimony, and was a mistake not occasioned by the negligence of the defendant. In this, it is shown only by the defendant himself, and admitting all he says, must be ascribed to gross negligence. When it is perceived, that in the case reported by Peere Williams, the amendment was in the first instance rejected, and was afterwards admitted with great difficulty, it is difficult to resist the conviction, that in this case the application would, without hesitation, have been denied. In that case, it was impossible that the justice of the case could have been impaired by the amendment, or that gross and culpable negligence could be encouraged by it. In this case, the reverse is the fact.

The case in 8 Vezey (Jennings v. Merton College, 8 Vez. 79) is nothing more than the common case of an amendment made to an answer before the cause comes on for hearing, perhaps before it is set for hearing. The case in 10 Vezey (Dolder v. Bank of England, 10 Vez. 284), so far as it respects amending an answer, refers only to the case already cited from the 8th volume of the same reporter, and so far as it respects exceptions, states a case previous to a hearing. The case in Ambler (Patterson v. Slaughter, Amb. 292, 294) was also an amendment, made before a hearing, by introducing a fact not to be proved by the defendant himself, but which only let him in, to prove his real case. The difficulty with which the amendment was allowed on that occasion, furnishes strong reason for the opinion that it would be, without hesitation, rejected in such a case as this. The principle laid down in Mitford (Mitf. Eq. Pl. 17, 18, 324, note b) appears from the note mentioned by Mr. Randolph, to go further than, from the subsequent practice of the court of chancery, would seem to be approved. But admitting it in its utmost latitude, it only goes to this: that where the proofs in a cause, show a case not put in issue by the pleadings, an amendment will be permitted, which shall bring the proofs and the real case before the court. 2 Madd. 375, 376; 4 Madd. 21–28; Caster v. Wood [Case No. 2,505].

It is obvious, that these are cases far short of the present. In none of them can there exist a question, respecting the unfair use which may be made of the indulgence.

In this case, the amendment would go beyond any which has ever been allowed, and that in a case where the precedent is susceptible of infinite abuse. The amended answer, therefore, cannot be received. This is the less essential, because the defendant will not be deprived of his right to give the actual sales in evidence to the jury. Motion to amend overruled.