SMITH (AYLWARD v.). See Cases Nos. 687 and 688.

## Case No. 13,008.
SMITH v. BABCOCK et al.
[3 Summ. 583.] [1]
Circuit Court, D. Massachusetts. May Term, 1839.

PLEADING IN EQUITY — AMENDMENTS TO ANSWER —WHEN ALLOWED—MISTAKE.

1. In matters of form, or mistakes of dates, or verbal inaccuracies, courts of equity are very indulgent in allowing amendments of answers.

2. But they are slow to allow amendments in material facts, or to change essentially the grounds taken in the original answer.
[Cited in India Rubber Comb Co. v. Phelps, Case No. 7,025; Rice v. Ege, 42 Fed. 660.]

3. Where the object is to let in new facts and defences, wholly dependent upon parol evi-

[1] [Reported by Charles Sumner, Esq.]

dence, the reluctance of the court to allow amendments is greatly increased, since it would encourage carelessness and indifference in making answers, and open the door to the introduction of testimony manufactured for the occasion.

[Cited in India Rubber Comb Co. v. Phelps, Case No. 7,025; Page v. Holmes Burglar Alarm Tel. Co., 2 Fed. 333; Cross v. Morgan, 6 Fed. 244; Spill v. Celluloid Manuf'g Co., 22 Fed. 96.]

[Cited in brief in Chouteau v. Allen, 74 Mo. 57. Cited in Elder v. Harris, 76 Va. 192.]

4. But where the facts sought to be introduced are written papers or documents, which have been omitted by accident or mistake, there the common reason does not apply in its full force; for such papers and documents cannot be made to speak a different language from that, which originally belonged to them.

[Cited in Wyman v. Babcock, Case No. 18,-113. Cited in brief in Reeves v. Keystone Bridge Co., Id. 11,660.]

[Cited in brief in Witters v. Sowles, 61 Vt. 367, 18 Atl. 191.]

5. The whole matter is in the discretion of the court; but, before the amendments to the answer are allowed, the court should be satisfied, that the reasons assigned for the application are cogent and satisfactory; that the mistakes to be corrected, or the facts to be added, are made highly probable, if not certain; that they are material to the merits of the case in controversy; that the party has not been guilty of gross negligence; and that the mistakes have been ascertained, and the new facts have come to the knowledge of the party, since the original answer was put in and sworn to.

[Cited in Neale v. Neale, 9 Wall. (76 U. S.) 9; Hicks v. Ferdinand, 20 Fed. 111; Rice v. Ege, 42 Fed. 660.]

6. Where a party sought to amend his answer, by showing, that the instrument annexed to the answer was not the original instrument executed at the time of the conveyance, or a copy thereof; but that it varied from that instrument in some important particulars material to the present controversies; that the original was lost or mislaid by the party (not the defendant) to whom it belonged; that the contents, so far as they were material in this application, as well as the existence and genuineness of the paper, could be established by satisfactory evidence; and that the mistake in the answer was not discovered, until long after the answer was sworn to and filed; and that its materiality was wholly unsuspected, until it was recently brought as a point of objection by the other side. *Held*, that under the circumstances, a supplementary answer might be filed, which should fully, positively, and accurately state all the attendant circumstances, and the substantial contents of the lost instrument, and in what particulars, as far as may be practicable, it differs from that annexed to the original answer in the case.

Bill in equity [by William Sydney Smith against Samuel H. Babcock, Joseph Noble, and others]. An application was made by Joseph Noble, by motion in this case, for leave to file an amended answer upon certain circumstances stated in the accompanying affidavit, which was in substance as follows: "That since making and swearing to his said answer, the said Noble has seen and conversed with Cross, and with John D. Kinsman, the attorney of said Cross, and by whom was written the agreement between the said Noble and Cross; setting forth the purposes and objects for which the said Noble was to hold the property conveyed to him by said Cross, and has been furnished with the original draft of said agreement, as said agreement was first written; and he says, that the paper annexed to his answer to the original bill of complaint of the plaintiff, marked C, is not a true copy of the agreement aforesaid, and all its parts and provisions, as the same was finally concluded and completed by him, and delivered to the said Cross; that the paper so annexed to said answer, and marked C, originated in this manner, that is to say: on the 19th day of October, 1835, said Kinsman prepared a paper as and for the agreement, which said Noble was to execute, and dated it as of that date; that the said Noble carried it to his house and had it copied, but on the copy the date was omitted; that he signed the said paper; but on the 22d day of October, 1835, when he met the said Cross for the purpose of completing the said agreement by delivery, it was not satisfactory and was not delivered, and a new agreement under date of 22d October was written, signed, and delivered, and was the agreement under and on which the said Noble took and held the property conveyed to him by the said Cross; and the said Noble, finding among his papers the copy of the first draft, so as aforesaid taken by him, supposed it to have, probably, been a copy of the agreement actually concluded, with the exception of the date. And the said Noble says, that the terms, substance, and objects of the said agreement, as finally concluded and completed, were such as are set forth and stated in his answer to the plaintiff's amended bill; and he asks to be permitted to prove on the hearing, the reasons why the first draft thereof was not satisfactory; and that one principal purpose and object, for which that, which was finally executed, was prepared, was to express, with more distinctness and certainty, the intention of the parties to be, that the property conveyed by the said Cross was to be held for, and applied to the then existing debts and liabilities from and on account of said Cross, J. B. Cross & Co., and renewals thereof." Certain other affidavits of Messrs. Kinsman, Mellen, and Daveis, and Cross and Poor, were also filed in corroboration.

Mr. Fletcher and E. H. Derby, for plaintiff. Choate & Greenleaf, for Noble.

STORY, Circuit Justice. The general rules of courts of equity in the amendment of answers are well known. In mere matters of form, or mistakes of dates, or verbal inaccuracies, courts of equity are very indulgent in allowing amendments. But when application is made to amend an answer in material facts, or to change essentially the grounds taken in the original answer, courts of equity are exceedingly slow and reluctant in acceding to it. To support such applications, they require very cogent circumstan-

ces, and such as repel the notion of any attempt of the party to evade the justice of the case, or to set up new and ingeniously contrived defences or subterfuges. Where the object is to let in new facts and defences wholly dependent upon parol evidence, the reluctance of the court is greatly increased; since it has a natural tendency to encourage carelessness and indifference in making answers, and leaves much room open for the introduction of testimony manufactured for the occasion. But where the new facts, sought to be introduced, are written papers or documents, which have been omitted by accident or mistake, there the same reason does not apply in its full force; for such papers and documents cannot be made to speak a different language from that which originally belonged to them.

The whole matter rests in the sound discretion of the court. I should be sorry, that it should be supposed, that the court had no authority to grant leave to file an amended answer, wherever it was manifest that the purposes of substantial justice required it. On the other hand, considering the solemnity of answers, I should be sorry to see any practice introduced, which should in any, the slightest degree, encourage negligence, indifference, or inattention to the duties imposed by law upon parties who are called upon to make statements under oath. And it seems to me, that, before any court of equity should allow such amended answers, it should be perfectly satisfied that the reasons assigned for the application are cogent and satisfactory; that the mistakes to be corrected, or the facts to be added, are made highly probable, if not certain; that they are material to the merits of the case in controversy; that the party has not been guilty of gross negligence; and that the mistakes have been ascertained, and the new facts have come to the knowledge of the party, since the original answer was put in and sworn to. Where the party relies upon new facts, which have come to his knowledge since the answer was put in; or where it is manifest that he has been taken by surprise, or where the mistake or omission is manifestly a mere inadvertence and oversight, there is generally less reason to object to the amendment, than there is where the whole bearing of the facts and evidence must have been well known before the answer was put in.

The present case is not an application to substitute one written document for another, which was annexed to the original answer by mistake, the mistake having been subsequently ascertained. If it were, the court would not hesitate to allow it; for the danger of perjury, or of a corrupt manufacture of an instrument to suit a new purpose, would not ordinarily occur. And, indeed, the court, before allowing the amendment, would require plenary proof of the antecedent existence, as well as of the genuineness, of the instrument. Nor can this be said to

be a case, in which the amendment proposes to offer parol evidence to mere facts in pais. It is an intermediate case, where the proposed amendment seeks to show, that the instrument annexed to the answer is not the original instrument, executed at the time of the conveyance, or a copy thereof; but that it varies from that instrument in some important particulars, material to the present controversy; that the original has been lost or mislaid by the party (not the defendant) to whom it belonged; that the contents, so far as they are material in this application, as well as the existence and genuineness of the paper, can be established by satisfactory evidence of disinterested persons, who were present at its execution and knew its contents; and that the mistake in the answer was not discovered until long after the answer was sworn to and filed, upon a conference with the parties, who were connected with the original transaction; and that the materiality of the mistake was wholly unsuspected, until it was recently brought out, as a point of objection, by the other side.

Now, upon the present application, it is not necessary, nor would it be proper finally to decide, whether the fact of such a mistake is positively and absolutely made out, or the existence and genuineness of such an original established beyond all controversy by the evidence. That would be more proper for consideration upon the final hearing of the cause upon the whole evidence, when all these and the other matters are put in issue before the court by the whole evidence in the cause. All that is required on the present ex parte application, is that the court should be satisfied that the defendant, Noble, has not been guilty of gross or inexcusable negligence in not before ascertaining the facts, or instituting inquiries respecting them; that there is a high probability that there was such a genuine, original instrument, different from that annexed to the answer; that there has been an entire good faith on the part of the defendant, Noble; and that there has been a real and inadvertent mistake. I must say, that, upon all these points, the evidence is clear and cogent. I do not say that it is conclusive or irresistible. That there was such an original, genuine instrument, differing from that annexed to the answer, is made out by the affidavits of Mr. Cross and Mr. Kinsman, in a manner which I can scarcely deem open to serious doubt. At least I cannot, in the present state of the evidence, overcome it without believing both those gentlemen have made very gross misstatements, and deliberately affirmed matters absolutely false. Certainly I can come to no such conclusion. Their narratives carry with them an intrinsic probability; and I may say, that Mr. Kinsman's known character at the Portland bar forbids such an imputation.

I have paused a good deal upon this matter, because I am exceedingly unwilling to

encourage any rashness, or negligence, or indifference in drawing up answers. But I deem it indispensable to the purposes of the administration of public justice, to hold to a strict course against allowing parties, upon afterthoughts, and new suggestions, and new aspects of a cause, to change the posture of the case from that in which they deliberately chose originally to present it to the court. Still, we must make allowances for human error and infirmity; and the object of all courts must be substantially the same, not to shut out truth, where it is clearly seen, but rather to invite its admission, if it may be done without the introduction of other mischiefs. I believe, that my duty requires me on this occasion to allow a supplemental answer to be filed. But certainly I ought not to accede to the introduction into the cause of that annexed to the motion of the defendant. It would be injustice to him, and not justice to the other side. The proposed supplemental answer contains no explanations of the supposed mistake, and no statement of the circumstances, under which it originated; and no positive allegations of the contents of the lost original instrument. It amounts to a positive naked denial, that the paper annexed to the original answer is that, which was executed, when the conveyances referred to were made. So that, upon this naked statement, the two answers would directly and flatly contradict each other; and the answers, being without any circumstances to explain the contradiction, would, as evidence, become mere nullities, and could, neither of them, be entitled to any credit. What I shall do therefore, is to grant the motion sub modo, allowing a supplementary answer to be put in, which shall fully, and positively, and accurately state all the attendant circumstances and the substantial contents of the lost instrument.

I have examined the authorities with some care and solicitude, to assist my own judgment upon the present occasion. The known caution and scrupulous hesitation of Lord Eldon make his decisions on such a subject of peculiar value. He has not hesitated to go as far as I have gone. Nay, he and other judges have gone somewhat further. In Livesey v. Wilson, 1 Ves. & B. 149, Lord Eldon was asked to allow a defendant to amend his original answer, which had stated, that he took possession of the whole of certain real estate, under a contract, of which a specific performance was sought, so far as to show, that he had taken possession of a part only. He refused it, unless the defendant would swear, that when he swore to the original answer, he meant to swear in the sense, in which he now desired to be at liberty to swear to the fact. This seems to convey a manifest implication, that if he would so swear, he might file an amendment of the answer, although it was merely evidence of a fact in pais, and resting in the knowledge of the defendant. In

Strange v. Collins, 2 Ves. & B. 163, the defendant had sworn in his answer (April, 1813), that he had obtained letters of administration on his father's estate, in which character he was sued for a legacy. He now moved to file a further answer, stating (among other things) by his affidavit, that upon looking over papers and deeds, since putting in his answer, he found that an administration was granted to him of his father's effects in the year 1797, at which time the defendant was just of age, and but little acquainted with business, and entirely ignorant of law, and considering that he was only doing some formal act, to make out a title to some leasehold property of his father which he had sold. Lord Eldon, upon the whole circumstances, which were detailed at large in the affidavit, allowed the amendment to be filed. Upon this occasion his lordship said: "This is a motion of considerable importance, for leave to file a supplemental answer; the object of which is to admit that the defendant is administrator of his father, and, as such, has effects sufficient to satisfy this legacy; which the answer denies. There is no suggestion by affidavit, that this application is made in consequence of any knowledge, or threat of an indictment for perjury. The application is supported by an affidavit, stating positively, that, when the defendant gave instructions for, and swore to, his answer, he had no recollection of the letters of administration; or that they in any way related to the matters in the bill; and that he never considered himself, but considered his mother as altogether in possession, she keeping the accounts; a representation not unnatural by an ignorant man. It is obvious, that, unless there is some general ground, upon which the defendant ought not to be permitted to put in a supplemental answer, it is for the benefit of the plaintiff that he should do so. But, whether the plaintiff may choose to except to it or not, care must be taken that public principle is not infringed; and the objection that has been made justifies me in requiring commissioners to pay more attention to transactions of so solemn a nature as taking answers upon oath, than has been applied in this instance; in which there is a degree of carelessness, which is shocking in moral consideration; the answer twice positively denying, that the defendant is the administrator, and that he ever possessed any part of his father's effects; the former a pure denial of a matter of fact; the other a fact, upon which an ignorant farmer might make a mistake, but commissioners, or the attorney, could not." In Edwards v. M'Leay, 2 Ves. & B. 256, a motion was made to file a supplementary answer upon an allegation of the discovery of an entry or minute in a parish book, after the answer had been sworn to and filed, the defendant by his affidavit stating, that at the time of filing his answer he had no recollection of such entry.

Lord Eldon granted the application, and said: "There are many cases, in which Lord Thurlow refused leave to amend an answer; and that is obviously right upon this reason, that the court, permitting the destruction of the answer upon the record, and the substitution of another, has no security as to the propriety, with which the first answer was sworn. The course since has therefore been to permit an additional answer to be filed, which has been done in many instances; always with great difficulty, where an addition is to be put upon the record, prejudicial to the plaintiff; though the court would be inclined to yield to the application, if the object was to remove out of the plaintiff's way the effect of a denial, or to give him the benefit of an admission, material, perhaps conclusive, to enable him to obtain a decree. Where, therefore, the opposition to such application is not upon the ground, that it is against the plaintiff's interest, that such supplemental answer should be put in, that, with reference to his interest in that cause or property, any mischief can arise to the plaintiff, the only ground for hesitation is the public interest, upon the circumstance, that the defendant might have been guilty of perjury, and a prosecution for that offence may be required by the public interest. In several instances, though that has been alleged, the court has permitted such supplemental answers. On the one hand, it has been constantly argued, that permitting it, the court decides against the prosecution; on the other, it is frequently urged with weight, that the court, refusing this, goes a great way towards convicting the defendant. The truth is, this permission ought to have no influence either way upon such prosecution. But a case was mentioned by Mr. Spranger, which throws much difficulty in the way. The King v. Carr, 1 Sid. 418; 2 Keb. 516. Upon an indictment for perjury in an answer, to which exceptions were taken, and a second answer put in, giving an explanation, it was resolved, that nothing shall be assigned as perjury, which is explained by the second answer; because the second answer makes that, which was at first a perjury, no perjury. Whether that would be held now, or not, there is a material distinction from this case. The habit of the court now is, to consider an insufficient answer as no answer. If the exceptions produce an explanation, the two are taken as one answer; and perhaps, in favor of a person accused, the court might hold them to be one answer, containing the explanation with the assertion constituting the charge. I should have had considerable difficulty in acceding to that. Upon this application for leave to put in a supplemental answer, considering all the consequences, and professing not to hold, that the explanation by such other answer takes away the opportunity of indictment upon the former answer, I think I ought to permit a supplemental or other answer to be filed in this case on payment of costs." There are other cases to the same effect; [2] but I think that these sufficiently show the practice.

I shall, therefore, make an order allowing a supplementary answer to be filed; but I shall expect it to contain a full and positive statement of all the circumstances, and of the substance of the original instrument, and in what particulars (as far as may be practicable) it differs from that annexed to the original answer in this case. Order accordingly.

[For final hearing in this cause, see Case No. 13,009.]

4. A bill charging falsehood and fraud in a sale, as to the exaggerated quantity of timber on land, may contain enough to justify setting the sale aside for a gross mistake in the quantity, without setting up the latter as a specific and separate cause: but it is better to have such cause stated independently, in order to give clearer notice to the respondents, of what is to be contested.

---

[2] See Wells v. Wood, 10 Ves. 401; Bowen v. Cross, 4 Johns. Ch. 375, and the cases there cited, and those collected in the Reporter's note a to Livesey v. Wilson, 1 Ves. & B. 149, 150.

