## GUBBINS v. LAUGHTENSCHLAGER et al.

(Circuit Court, S. D. Iowa, E. D. July 9, 1896.)

1. EQUITY PLEADING—AMENDMENTS, WHEN ALLOWABLE.

Under equity rule 60, certain amendments as to matters of form or "other small matters" are allowable as of course, if replication has not yet been filed, or the cause has been set down for hearing on bill and answer; but after replication, or setting down for hearing, amendments are dependent on leave of court, and in the exercise of its discretion.

2. SAME.

After the cause has been prepared for trial, hearing had, and the issues fully submitted, the discretion of the court is not so easily moved to allow

amendments in material matters as in the earlier stages, when the issues are in a formative condition.

3. SAME—AMENDMENT AFTER DECISION FILED—JURISDICTIONAL AVERMENTS.

In a cause which had been pending for several years a hearing was had, lasting several days, and oral arguments were made. Thereafter written briefs were submitted, a decision filed, and the draft of a proposed decree submitted. *Held*, that the court, in the exercise of its discretion, would not thereafter permit defendants to amend their answer by withdrawing repeated admissions of their citizenship as alleged by complainants, and substituting averments showing that they were citizens of another state, so that the jurisdiction of the court would be defeated, especially where defendants were necessarily conversant with the facts from the beginning, and the suit was to enforce a mechanic's lien; so that, in case the suit were dismissed, there was grave doubt whether complainant would not be debarred by lapse of time from bringing a new suit in a state court.

This was a suit in equity by John Gubbins against Adam C. Laughtenschlager and William Huttenlocher. The cause was heard on motion by defendants for leave to file amendments to their answers, changing the allegations therein as to the citizenship of defendant Laughtenschlager.

James C. Davis and Clark Varnum, for the motion.

James H. Anderson and A. B. Jenks, opposed.

WOOLSON, District Judge. On April 18, 1896, defendants presented to the court their motion for leave to file amendment to their answers theretofore filed herein. On April 20th defendants, by leave, filed amendment to said motion. To the granting of such motion plaintiff objected. The motion, as first presented, being supported by the affidavit of defendant Laughtenschlager, plaintiff filed affidavits resisting such motion, whereupon defendants filed further affidavits supporting the motion.

The substance of the amendments to answers as sought to be filed is: (1) A withdrawal from former answers of the allegations therein contained, which admit that said defendants are, and were at commencement of this action, severally citizens of the state of Iowa, and (2) the substitution therefor of allegations to the effect that defendant Laughtenschlager was at the time of the commencement of this action a citizen of the state of Illinois, and (3) the prayer that because plaintiff, Gubbins, was at the time of the commencement of this action a citizen of the same state of which defendant Laughtenschlager was then a citizen, the action be dismissed, as without the jurisdiction of this court.

It is conceded that if the fact now sought to be pleaded by the proposed amendment to the answers of defendants exists, and had properly been brought before the court, and sustained by competent proof, the diverse citizenship requisite to give jurisdiction of this action would, under such proof, be wanting. Before considering the motion for leave to file, it may be well to notice the present status of this action. The action was commenced in this court in 1892, the petition being filed in the clerk's office August 10th of that year. The relief sought therein is the foreclosure of a mechanic's lien upon property situated in Ft. Madison, Iowa, and judgment against defendants named in the caption above for work and material set forth in

the statement (annexed by copy to the petition) of said lien, in accordance with the statutes of Iowa. This petition alleges that:

Your petitioner resides in the city of Chicago, and is a citizen of the state of Illinois, and that defendants, Adam C. Laughtenschlager and William Huttenlocher, are both of residence in the state and district of Iowa, and are citizens of said state and district.

By error in the clerk's office this action was docketed as an action at law, and summons issued therein. The return of service, as entered on said summons, recites:

That said writ was served on defendant Laughtenschlager on August 13, 1892, by reading the same to Mary Laughtenschlager, the wife of Adam C. Laughtenschlager, a member of his family, over the age of sixteen, at his residence, and delivering a true copy to her, at Fort Madison, in the county of Lee, and state of Iowa.

Upon January 7, 1893, the defendants filed their answer herein, the same being sworn to on January 4, 1893, by defendant Huttenlocher, before one of the attorneys of record for defendants, who was a notary public. In this answer, after denying "each and every allegation in the petition contained not herein specifically admitted or pleaded to," the citizenship, etc., of defendants is stated as follows:

Defendants admit the citizenship of the parties as alleged in plaintiff's petition. Defendants admit that at the time of the filing of said petition these defendants were engaged as co-partners in business in the city of Fort Madison, Iowa.

Attached to said answer is a "counterclaim and cross petition," the first three paragraphs of which are as follows:

And by way of counterclaim and cross petition against plaintiff, defendants allege:

(1) That the defendants, Adam C. Laughtenschlager and William Huttenlocher, on and prior to the 7th day of January, were engaged as partners, and were about to construct and erect a packing house in the city of Fort Madison, Iowa. That said A. C. Laughtenschlager and William Huttenlocher are now, and were at the commencement of this action, and still are, residents and citizens of the city of Fort Madison, Lee county, Iowa.

(2) That John Gubbins, the defendant in this cross petition, is now, and was at the time of the institution of this action, and still is, a resident of the city of Chicago, Illinois, county of Cook.

(3) That the controversy hereinafter set forth is a controversy between citizens of different states of the United States, and the amount in controversy, exclusive of costs, exceeds $2,000.

Judgment is demanded in said last-named pleading (which is verified by defendant Huttenlocher) in the sum of $100,000 against plaintiff.

On November 6, 1893, plaintiff (having previously filed a demurrer, now withdrawn) filed his answer to this "counterclaim and cross petition," in which he admits the allegations of the first, second, and third paragraphs above set out. On January —, 1894, on motion of complainant, the error in docketing the action on the law docket was corrected by an order directing the clerk to docket same on the equity docket. Thereupon, by leave, complainant, on January 24, 1894, filed an amendment to his "original bill of complaint," by adding thereto certain averments, whereupon, on January 30, 1894,

defendants filed a pleading entitled "Answer of Adam C. Laughten-schlager and William Huttenlocher, respondents, to the bill and amended bill of complaint of John Gubbins, complainant," in which said respondents say:

(1) They admit that at the time of the institution of action John Gubbins, complainant, was a citizen and resident of the city of Chicago, state of Illinois. (2) That each of said respondents at the time of the institution of this action was a citizen and resident of the city of Fort Madison, state of Iowa. * * * (9) Respondents deny each and every allegation not herein specifically admitted or specifically pleaded to. Wherefore, having answered thus fully, respondents humbly pray to be dismissed with their reasonable costs, etc.

On the same date, January 30, 1894, said defendants filed their cross bill in said action, the opening paragraphs of which are as follows:

Adam C. Laughtenschlager and William Huttenlocher, the respondents in the original bill of complaint, by leave of court first had and obtained, present this, their cross bill, against John Gubbins, the complainant in the original bill of complaint, and for cause of action charge and allege: (1) That said complainants, Adam C. Laughtenschlager and William Huttenlocher, on and prior to the 7th day of January, 1892, were engaged as partners under the firm name and style of A. C. Laughtenschlager & Co., and as such partners were about to construct and erect a packing house in the city of Fort Madison, Lee county, Iowa. (2) That said Adam C. Laughtenschlager and William Huttenlocher were at the time of the commencement of this action citizens and residents of Fort Madison, Lee county, Iowa. (3) That John Gubbins, the respondent in this cross bill, is now, and was at the commencement of this suit, and still is, a resident of the city of Chicago, state of Illinois. (4) That the controversy hereinafter set forth is a controversy which, at the time of the commencement of this action, was a controversy between citizens and residents of different states of the United States, and the amount in controversy, exclusive of costs and interest, exceeds the sum of $2,000. (5) Complainants allege that the cause of action hereinafter set forth grows out of a contract set up in the original proceeding by the filing by respondent of his original complaint in this cause on or about the 10th day of August, 1892, wherein John Gubbins, respondent in this cross bill, was complainant, and complainants herein were respondents.

The prayer in the cross bill is for judgment against plaintiff, Gubbins, for $100,000.

On February 20, 1894, plaintiff, Gubbins, filed his answer to said cross bill, wherein he "admits the truth of the allegations numbered two, three, four, and five" of said cross bill, which include, as shown above, the allegations of diverse citizenship. Replications having been duly filed, the parties proceeded to the taking of testimony. The evidence filed herein extends over many hundreds of pages. The abstract of evidence covered nearly 500 pages. The cause came on for hearing in June, 1895, and occupied the time of the court and counsel for nearly three days. The cause was also presented to the court in written briefs. Upon March 2, 1896, the opinion of the court was filed, finding the equities with plaintiff, dismissing the cross bill, ordering judgment for plaintiff for about $18,000, and decree foreclosing mechanic's lien, etc. Upon March 9, 1896, counsel for defendants were served by counsel for plaintiff with notice that on the first day of the next term of court, to wit, April 14, 1896, they would present to the court for signature a decree in said cause, a copy of said proposed decree being served

with such notice. Thereafter, as stated above, defendants presented to the court their motion for leave to file amendment to their answers.

I have thus particularly stated the proceedings had in the case, and the condition of the pleadings, to the end that the exact status of the case when this motion was presented might be clearly apparent. It will be noticed that no decree had been actually signed. But the findings of the court had been given and filed. In this respect the situation was analogous to a verdict of the jury in a law action having been returned into court. On the argument, accompanying the presentation of said motion for leave to file, no claim was made that defendants were, as of right, entitled to file the amendment. The claim as urged was that the rightful exercise of the discretion of the court in the matter must necessarily lead to the granting of such leave. Under equity rule 60, amendments, as to matter of form, filling blanks, or "other small matter," are allowable as of course, if replication has not yet been put in, or the cause not set down for hearing upon bill and answer. But, after replication, or such setting down for a hearing, amendments are dependent on leave of court, in the exercise of discretion. As early as Wright v. Lessee of Hollingsworth, 1 Pet. 168, the supreme court declared that "the allowance and refusal of amendments in the pleadings * * * are matters so peculiarly addressed to the sound discretion of the court of original jurisdiction as to be fit for their discretion only, under their own rules and modes of practice." Later, in Hardin v. Boyd, 113 U. S. 756, 761, 5 Sup. Ct. 773, the supreme court uses this language:

In reference to amendment of equity pleadings the courts have found it impracticable to lay down a rule that would govern all cases. Their allowance must, at every stage of the cause, rest in the discretion of the court; and that discretion must depend largely on the special circumstances of each case.

This language is quoted and approved in Richmond v. Irons, 121 U. S. 27, 47, 7 Sup. Ct. 796.

After the cause has been prepared for trial, and hearing had, and fully submitted, the discretion of the court is not so easily moved to grant an amendment on material matters as in the earlier stage, when the issues are, as it may be said, in a formative condition. During the trial, the necessity, in furtherance of justice, frequently exists, to allow amendments, to conform the pleadings to the proof. And in such cases, where no substantial prejudice is thereby caused to the opposite party, the leave is generally given to amend, and the trial proceeds under conditions such as the court shall deem just.

In Neale v. Neales, 9 Wall. 1, 8, the supreme court was called upon to review a ruling of the court below, which had allowed an amendment to the bill. After hearing had been had on the original bill, the court, on its own motion, ordered that complainants have leave to amend, on payment of costs, etc. Hearing was subsequently had on an amended bill, and decree entered for complainant. Justice Davis, at some length, considers the matter of allowance of amendments. In that case the amended bill presented substantially "an

entirely new case," save as to subject-matter. The contract and promise as alleged differ materially, while the consideration and acts of part performance are largely the same. The action of the court below was sustained, as being in accordance with the proof, and the leave to amend worked no injustice or prejudice to defendant, a full hearing (though second hearing of the cause) having been had on the amended bill. The learned justice, in considering whether, when the purposes of substantial justice required it, "the court might allow so material a change in the case as here appeared," where "the evidence made out a case for relief, but a case different from the one stated in the bill, and that it was necessary either to dismiss the bill without prejudice or give leave to amend," says:

To accomplish the object for which a court of equity was created, it has the power to adapt its proceedings to the exigency of each particular case; but this power would very often be ineffectual for the purpose, unless it also possessed the additional power, after a cause was heard, and a case for relief made out, but not the case disclosed in the bill, to allow an alteration of the pleadings on terms, that the party not in fault would have no reasonable ground to object to. * * * Necessarily, in a federal tribunal, the matter of amendment, at this stage of the progress of a cause, rests in the sound discretion of the court. At an earlier stage, this discretion is controlled by the rules of equity practice adopted by this court, but not so upon the hearing, for there is no rule on the subject of amendments applicable to a cause which has advanced to this point.

In the case at bar, not only had a full hearing, occupying a number of days, been had, and oral arguments heard, and thereafter further briefs submitted, but the decision of the court had been filed, and draft of proposed decree thereon served on party now asking leave to amend. In Hardin v. Boyd, supra, it was said:

It may be said, generally, that in passing upon applications to amend, the ends of justice should never be sacrificed to mere form, or by the too rigid adherence to technical rules of practice. Undoubtedly great caution should be exercised when the application comes after the litigation has continued for some time, or when the granting of it would cause serious inconvenience or expense to the opposite party. And an amendment should rarely, if ever, be permitted where it would materially change the very substance of the case made by the bill, and to which the parties have directed their proof.

In the Tremolo Patent, 23 Wall. 518, 527, Justice Strong, speaking for the court, says:

It is true that an amendment which changes the character of the bill ought not generally to be allowed after a case has been set for hearing, and still less after it has been heard.

Numerous cases have been cited by counsel for plaintiff as sustaining the point that the question of citizenship herein can only be raised by plea in abatement. Such appears for a long time to have been the holding of the supreme court. In Hartog v. Memory, 116 U. S. 588, 590, 6 Sup. Ct. 521 (decided in 1885), the point under consideration is stated in the opinion therein rendered by Chief Justice Waite. The action had been dismissed by the court below, upon what was there held to be lack of jurisdiction on account of citizenship, as developed in the evidence. In reversing the order dismissing the action the court say:

It was well settled before the act of 1875 that when the citizenship necessary for the jurisdiction of the courts of the United States appeared

on the face of the record, evidence to contradict the record was not admissible, except under a plea in abatement, in the nature of a plea to the jurisdiction; and that a plea to the merits was a waiver of such a plea to the jurisdiction. In its general scope this rule has not been altered by the act of 1875. * * * The statute changed the rule so far as to allow the court at any time, without plea, and without motion, to stop all further proceedings, and dismiss the case the moment a fraud in its jurisdiction was discovered. Neither party has the right, however, without pleading at the proper time and in the proper way, to introduce evidence, the only purpose of which is to make out a case for dismissal. The parties cannot call on the court to go behind the averments of citizenship in the record, except by a plea to the jurisdiction, or some other appropriate form of proceeding. The case is not to be tried by the parties as if there was a plea to the jurisdiction when no such plea has been filed. The evidence must be directed to the issues, and it is only when facts material to the issues show there is no jurisdiction that the court can dismiss the case upon the motion of either party. If, in the course of the trial, it appears by evidence which is admissible under the pleadings, and pertinent to the issues joined, that the suit does not really and substantially involve a dispute of which the court has cognizance, or that the parties have been improperly or collusively made or joined for the purpose of creating a cognizable case, the court may stop all further proceedings, and dismiss the suit.

As to how these facts must appear in the evidence before such order of dismissal is authorized, the court say in Barry v. Edmunds, 116 U. S. 550, 559, 6 Sup. Ct. 506:

In making such an order, therefore, the circuit court exercises a legal, and not a personal, discretion, which must be exerted in view of the facts sufficiently proven, and controlled by fixed rules of law. It might happen that the judge on the trial or hearing of a cause would receive impressions amounting to a moral certainty that it does not really and substantially involve a dispute or controversy within the jurisdiction of the court. But upon such a personal conviction, however strong, he would not be at liberty to act, unless the facts upon which the persuasion is based, when made to appear distinctly on record, create a legal certainty of the conclusion based on them. Nothing less than this is meant by the statute when it provides that the failure of the jurisdiction on this account "shall appear to the satisfaction of said circuit court."

In Manufacturing Co. v. Bradley, 105 U. S. 175, 181, the court declare that:

To confer or oust jurisdiction, when that depends on citizenship, the necessary facts must be distinctly alleged, and admitted or proven.

In Railroad Co. v. Quigley, 21 How. 202, 214, the court say:

"The only plea filed in this cause is the general issue. That plea raises an issue on the merits of the complaint, and leaves the jurisdiction allegations without a traverse. No question involving the capacity of the parties in the cause to litigate in the circuit court can be raised before the jury under such pleadings;" and numerous cases are cited, including Conard v. Insurance Co., 1 Pet. 386; Evans v. Gee, 11 Pet. 80; Wickliffe v. Owings, 17 How. 47.

So in Deputron v. Young, 134 U. S. 241, 251, 10 Sup. Ct. 543, the court, on a point involving the question of jurisdiction on account of citizenship, say:

Clearly, where the jurisdictional allegation is not traversed, no question involving the capacity of the parties in the cause to litigate in the circuit court can be raised before the jury (Railroad Co. v. Quigley, 21 How. 202), or treated as within the issues they might be impaneled to determine.

A further extract from Hartog v. Memory, supra, may here be given as pertinent to, yet not as strong as, the case at bar. The declara-

tion had stated diverse citizenship of the parties, such as, if truly
stated, gave the court jurisdiction. The defendant pleaded to the
merits. It was claimed that during the taking of testimony (as is
claimed in the case at bar) one of the parties testified to facts which
showed the court had no jurisdiction. The court, in reversing the
order of dismissal, say:

> Under the issues joined, the question of citizenship did not and could not
> arise. If a judgment had been rendered on the verdict, defendant would have
> been bound by it, notwithstanding both he and Hartog were aliens. The
> record would have estopped him from denying the jurisdiction of the court.
> The testimony about his citizenship was irrelevant and immaterial. It did
> not in any manner relate to the merits of the case. It apparently came out
> incidentally, without attracting the attention of the court at the time. The
> defendant suffered it to pass without special notice at the time, until after
> verdict against him.

This quotation is peculiarly applicable in the case at bar to the
testimony of defendant Laughtenschlager, which in manner of its
giving and contents is very similar to that in the Hartog Case.  Not
only must the objection to jurisdiction based on citizenship be
brought squarely before the court, but its presentation must be
timely. It is due to the opposite party, as well as to the court, that
whatever objection exists affecting the jurisdiction of the court shall
be brought before the court at the earliest practicable opportunity.
In the case at bar defendants now ask the court to permit a pleading to
be filed which shall withdraw their repeated admissions of diverse
citizenship, and permit them at this stage, and for the first time, to
raise an issue on this jurisdictional question. Under the pleadings,
the testimony taken, and affidavits filed by them, not only must de-
fendant Laughtenschlager himself have known at the commencement
of this action the facts as to his citizenship, but it is impossible that
his co-defendant, Huttenlocher, could have been ignorant of it. Each
of these defendants was repeatedly upon the stand as a witness, and
weeks were consumed in taking testimony. The hearing occupied
about three days, and was full and exhaustive.  Written briefs were
subsequently presented. The work of the court in examination of
the case and making its findings occupied over two weeks of continu-
ous and hard labor. During none of these periods, from commence-
ment of suit, in August, 1892, to filing of decision of the court, in
March, 1896, was any suggestion by either defendant or their counsel
made as to defect of jurisdiction. Should the court permit the plead-
ing now to be filed raising that issue?  Plainly, if granted, the condi-
tion of the filing ought to be the payment of all the taxable costs to
date. But, even under such condition, ought leave to be granted?
If the matter was to be decided on the testimony already taken and
affidavits filed, the court must decide against the point now sought to
be made, and hold the court has jurisdiction under the presentation
made. But should the court grant leave to raise the issue and the
introduction of testimony thereon?  The record discloses no reason
why defendants had not sooner presented the point.  Under the
cases above cited, the testimony of Laughtenschlager on this point
was "irrelevant and wholly immaterial" to the issues presented by
the pleadings filed therein, and would not have justified the dismissal

of the case.    In Cotten v. Casualty Co., 41 Fed. 506, 510, the general rule of practice is considered which relates to granting leave to file amendments to pleadings:

But this rule does not relieve the pleader from presenting his plea within the time required by the statute or the practice of the court, or within a reasonable time after ascertaining the facts upon which the defense is based, or, what is the same thing, a knowledge of such facts as will put a reasonable man on inquiry, which, if presented, would have led to a knowledge of the matters sought to be pleaded.

In Hewitt v. Story, 39 Fed. 158, Judge Ross had under consideration this point.    The bill had been filed for over two years.    Amended pleadings had, by leave, been filed.    Appointment of examiner had been made, and the taking of testimony had been in progress, and progressed to quite a length.    Upon an order for filing answer to amended bill a plea to the jurisdiction was filed, based on the citizenship of the parties.    Judge Ross was considering a motion to strike out the plea.    He says (page 160):

It is one thing for the court, in the interest of justice, and in the exercise of the authority conferred and duty imposed upon it by the act of 1875, whenever it has reason to believe that its jurisdiction is being imposed upon, of its own motion to cause the necessary inquiry to be made, to the end that all further proceedings may be stopped, and the suit be dismissed in the event it should be found that a fraud upon its jurisdiction had been committed; and quite another thing for parties to interpose pleas out of the regular established order of proceedings. If the plea in question was properly filed, it might with equal propriety have been withheld until all the testimony should be taken, and then put in. It was too late when filed, or it would not have been too late then. That parties have a right, after answering to the merits and permitting testimony to be taken, thereby entailing expense upon the opposite party, and consuming the time of the court and officers, to interpose a plea to the jurisdiction, which from its very nature is a matter to be first disposed of, and which, under the long-established practice, should be interposed before answer to the merits, seems to me out of all reason. Such a practice should never be tolerated in the absence of statutory requirement, for it would lead to unnecessary expense to the parties, and to great uncertainty, delay, and inconvenience in the proceedings of the court.

And the learned judge then takes up the statute of 1875, and, construing it in the light of Hartog v. Memory, supra, arrives at his decision that the plea should be stricken from the files as out of time.

Kennedy v. Refining Co., 69 Fed. 716, was a case where answer to the merits was filed, and a large amount of testimony taken by both parties.    Upon submission of the case, defendant contended that the allegations as to diverse citizenship did not sustain jurisdiction.    The court say:

These averments as to the citizenship of the defendants are wholly insufficient to confer jurisdiction upon the court, and, if a demurrer had been interposed, the same would have been sustained. But, defendants having answered, and all parties having gone to great expense in taking testimony, it is now too late for the defendants to make this contention. If the objection related to the want of jurisdiction because of the subject-matter, the court would pass upon such question at any time, without reference to the state of the pleadings. But an objection on account of diverse citizenship may be waived by answer, and the court is of the opinion that in this case the defendants have made such waiver, and it is now too late to make the contention relied upon in their brief.

Smith v. Babcock, 3 Sumn. 583, Fed. Cas. No. 13,008, was decided by Justice Story. Application was made for leave to file amended answer, supported by affidavits. After referring to the general power and the practice of courts of equity in granting leave to amend, the learned justice proceeds:

The whole matter rests in the sound discretion of the court. I should be sorry should it be supposed that the court had no authority to grant leave to file amended answer, whenever it was manifest that the purposes of substantial justice required it. On the other hand, considering the solemnity of answers, I should be sorry to see any practice introduced which should in any—the slightest—degree, encourage negligence, indifference, or inattention to the duties imposed by law upon parties who are called upon to make statements under oath. And it seems to me that, before any court of equity should allow such amended answers, it should be perfectly satisfied that the reasons assigned are cogent and satisfactory for the application; that the mistakes to be corrected or the facts to be added are made highly probable, if not certain; that they are material to the merits of the case in controversy; that the party has not been guilty of gross negligence; and that the mistakes have been ascertained, and the new facts have come to the knowledge of the party, since the answer was put in. Where it was manifest he was taken by surprise, or where the mistake or omission is manifestly a mere inadvertence or oversight, there is generally less reason to object to the amendment than there is where the whole bearing of the facts and evidence must have been well known before the answer was put in.

In Calloway v. Dobson, 1 Brock. 119, Fed. Cas. No. 2,325, Chief Justice Marshall was called to consider at the circuit much the same question which is here presented. In that suit (judgment at law having theretofore been rendered, and bill filed to restrain proceedings thereunder) an injunction was issued pendente lite, and, answer having been filed, testimony was taken, the case submitted, and the court had announced its decision, and interlocutory decree signed. Thereupon defendant asked leave to avail himself of additional defense in the nature of certain material accounts, alleged to have been found by him in books of account after this interlocutory decree was entered. The chief justice, after stating the general rules pertaining to allowance of amendments, adds:

Perhaps the legal discretion which exists in the case acknowledges no other limit than is necessary for the purposes of justice, and for the restraint of gross and inexcusable negligence.

As to the amendments in equity causes, he says:

Although courts of equity seem, in general, less trammeled by technical rules than courts of law, they exhibit less facility in allowing amendments to an answer than is exhibited by courts of law in allowing amendments to pleadings. The instances are rare in which amendments to an answer have been allowed after a cause has been heard, and there has been any expression of an opinion from the court.

With regard to the case then under consideration, and the omission defendant had made in his original answer of what he now seeks to supply, the learned chief justice says:

After finding that the consequences of this omission are unfavorable to himself, he offers to make it, and asks to be placed in the situation he would have held had it been made originally. The indulgence suggested may promote the justice of the case, but it is apparent it may endanger that justice. The defendant who is called upon for discovering may disclose just as much as he pleases, may take the chance of any advantage which the experiment

may afford, with the confidence that its proving unsuccessful will do him no injury. It is extremely probable that in this case the particular accounts now offered were overlooked, and not purposely concealed. But there is no evidence of this except the defendant himself,—a declaration which may be made in every case. Admitting it to be true, it implies gross negligence, which is of a description so calculated for the introduction of fraud that the general policy of the law may require the person who has committed it to bear the consequences.

And, after examining precedents, leave to amend was denied. The arguments so forcibly presented in the case cited, though the amendment there related to the merits of amended answer as well as the time of application for leave, are very instructive as to the proper action in case at bar.

Attention is again directed to the case of Hartog v. Memory, supra, as in line with the reasoning of Chief Justice Marshall, and as enforcing the duty of a defendant to make prompt and timely application for leave to amend, as soon as the facts involved become known. A defendant may not state his defense in piecemeal, presenting a new part after decision rendered, for the purpose of meeting that decision and having an additional trial as to that, and, if there defeated, presenting still another part, etc. A party may not thus experiment with the court. Suits cannot thus be tried. Else there is no end to litigation, until the ingenuity of counsel and defendant in suggesting additional facts is exhausted.

Although not suggested by counsel, a further suggestion may be made as having proper bearing on the exercise of the discretion confided to the court in this matter. In his argument much stress was laid by counsel for defendant on the fact, claimed by him as sustained by the evidence, that defendants had each been financially ruined and had become insolvent by what counsel insisted was the malperformance by plaintiff of his contract with defendants, and counsel referred to portions of the evidence as sustaining his claim. If such be the financial condition of defendants, in what situation would plaintiff be placed if the proposed amendment were permitted to be filed, and this cause dismissed as without the jurisdiction of the court, according to the prayer defendants now make, and ask leave to file? Plaintiff brought this action to foreclose his mechanic's lien on August 10, 1892, conformably to notice served on him by defendants dated July 19, 1892, under section 3321, McClain's Code Iowa, requiring him to commence suit within 30 days after such notice, or the lien would be forfeited. The question is a serious one as to the right of defendant now to commence in the state court his action to foreclose his mechanic's lien, if the cause be now dismissed. And again, by subdivision 2 of section 2529, Code Iowa (section 3734, McClain's Code), the period of limitation for bringing an action to enforce a mechanic's lien is declared to be "within two years from the time of the filing the statement in the clerk's office." Plaintiff's statement for such lien was filed in the clerk's office upon July 8, 1892. Here again is the serious question whether, under this general statute, plaintiff might now, in the state courts, bring his action to foreclose his mechanic's lien, if this action be dismissed, as defendants, by their proposed amendment, ask. This two years from time of

filing of statement has long since expired, while defendants were in this court, and while plaintiff was here seeking to enforce his lien, with the oft-repeated declaration of defendants then in the pleadings in this case that defendants were each then, and at the commencement of this suit had been, residents and citizens of the state of Iowa. If plaintiff may not enforce his mechanic's lien in the state courts (and this court has found him entitled to its enforcement for amount due him of nearly $20,000), and if defendants are insolvent, so that a personal judgment against them is noncollectible, ought the court, as a court of equity, in its discretion, to allow the filing of an amendment at this period of the litigation, which may, and probably would, have the effect of making a judgment for the large amount this court finds due him worthless in his hands? In Salisbury v. Bennett, 72 Fed. 743, Circuit Judge Lacombe had under consideration a motion for leave to amend answer by setting up the statute of limitations. The action was for libel, and the limitation of action two years. When the original answer was filed it was not believed the defense of this statute, as the declaration of the state courts then stood, could be successfully established. But the court of appeals of that state (New York) during the pendency of the action had so construed such statute as that it would now probably furnish a good defense. Defendant had been out of the state, after the libel was published, for nearly the entire two years before suit brought. Promptly on his return service of notice was had, although nearly three years had elapsed, and he could not have been sooner served after suit was begun. The defendant appeared, and answered to the merits. If the proposed amendment was now permitted, the action must in all probability fail. How should the court exercise its discretion? Judge Lacombe says that "the excuse given for not pleading this defense (limitations) originally is a reasonable one." But he adds:

Nevertheless, when application is made to the favor of the court for leave to interpose any defense, and the application is one resting in discretion, all the circumstances of the case will be considered, and care taken not to sanction any such abuse of procedure as would shock the conscience.

And he declares, as to the amendment, if applicable to the case in the United States court, that because it would be grossly inequitable to permit him thus to defeat the plaintiff's claim, his application should be denied. The same considerations applied in this case lead to the same denial of leave to amend.

Further, the motion for leave herein presented relates only to the answers filed by the defendants. If the leave was granted as asked, the cross bills would still remain, with their averments that defendants were at the time of the commencement of this suit citizens of Iowa, and that the controversy in said cross bills tendered was between citizens of different states. The motion for leave to file amendments to answer of defendants is overruled. Ordered accordingly, and defendants severally except.

The clerk will notify counsel of record of the decision announced, and that at 10 a. m. on July 16, 1896, the court will be in session at the court room at Keokuk, for the purpose of signing the decree in the cause in accordance with the decision heretofore filed herein.